2013 COA 126

**Ty WINTER, Petitioner,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado; City of Trinidad; and CIRSA, Respondents.**

**Court of Appeals No. 12CA2437**

Colorado Court of Appeals,
Div. VII.

Announced August 15, 2013

---

610

Industrial Claim Appeals Office of the State of Colorado, WC No. 4–834–668

Steven U. Mullens, P.C., Steven U. Mullens, Colorado Springs, Colorado, for Petitioner

No Appearance for Respondent Industrial Claim Appeals Office

Ritsema & Lyon, P.C., Susan K. Reeves, Colorado Springs, Colorado, for Respondents City of Trinidad and CIRSA

Opinion by JUDGE TERRY

¶ 1 In this workers' compensation proceeding, Ty Winter (claimant) seeks review of the final order issued by the Industrial Claim Appeals Office (Panel) in favor of his employer, the City of Trinidad, and its insurer, CIRSA, which upheld the denial of his request for prepayment of the hotel and meal expenses he incurred while traveling to see his authorized treating physician. We affirm.

## I. Background

¶ 2 In August 2010, claimant suffered a compensable knee injury. He developed a pathology in the knee that necessitated surgery by an orthopedic surgeon with special expertise in treating the condition. CIRSA designated a specialist in Vail, Colorado, and claimant, who lives in Trinidad, Colorado, had a number of routine post-surgical appointments with him.

¶ 3 CIRSA initially prepaid claimant's round-trip mileage, hotel room, and meals. However, after claimant's third appointment with the specialist, CIRSA advanced only the cost of claimant's roundtrip mileage. CIRSA based its refusal to prepay the meals and hotel on Department of Labor and Employment Rule 18–6(E), 7 Code Colo. Regs. 1101–3, which provides:

> The payer shall reimburse an injured worker for reasonable and necessary mileage expenses for travel to and from medical appointments and reasonable mileage to obtain prescribed medications. The reimbursement rate shall be 52 [formerly 47] cents per mile. The injured worker shall submit a statement to the payer showing the date(s) of travel and number of miles traveled, with receipts for any other reasonable and necessary travel expenses incurred.

¶ 4 CIRSA's refusal to advance the costs of the hotel or meals continued even after claimant had informed it that he could not afford to prepay such costs. Claimant then applied for a hearing, seeking an order requiring CIRSA to advance the costs of mileage, meals, and hotel accommodations for his scheduled appointments with the specialist.

¶ 5 Following an evidentiary hearing, the administrative law judge (ALJ) noted that CIRSA had acknowledged its responsibility to pay the travel costs associated with claimant's appointments with the specialist, including meals and lodging, as medical benefits it was obligated to provide to claimant. How-

ever, relying on Rule 18–6(E), the ALJ concluded that claimant did not establish his entitlement to advance payment of the costs of meals and lodging by a preponderance of the evidence. Instead, the ALJ concluded that under Rule 18–6(E), mileage and other travel-related expenses were to be reimbursed rather than advanced.

¶ 6 The Panel affirmed on review, and claimant appeals that decision.

## II. Legal Standards

¶ 7 We uphold the ALJ's factual findings in a workers' compensation case if they are supported by substantial evidence in the record. § 8–43–308, C.R.S.2012; *Kieckhafer v. Indus. Claim Appeals Office*, 2012 COA 124, ¶ 12, 284 P.3d 202. However, we review de novo questions of law and of the application of law to undisputed facts. *Hire Quest, LLC v. Indus. Claim Appeals Office*, 264 P.3d 632, 635 (Colo.App.2011). Thus, an agency's decision that misconstrues or misapplies the law is not binding. *Paint Connection Plus v. Indus. Claim Appeals Office*, 240 P.3d 429, 431 (Colo.App.2010).

¶ 8 We review the construction of statutes de novo. *Lobato v. Indus. Claims Appeals Office*, 105 P.3d 220, 223 (Colo.2005). When interpreting a statute, we must determine and give effect to the General Assembly's intent. *Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023, 1029 (Colo.2004). If the statutory language is clear, we interpret the statute according to its plain and ordinary meaning. *Specialty Rests. Corp. v. Nelson*, 231 P.3d 393, 397 (Colo.2010).

¶ 9 In construing an administrative rule or regulation, we apply the same rules of construction as we would in interpreting a statute, *Safeway, Inc. v. Industrial Claim Appeals Office*, 186 P.3d 103, 105 (Colo.App. 2008), and our review is de novo, *Colorado Division of Insurance v. Trujillo*, 2012 COA 54, ¶ 12, —— P.3d ——, 2012 WL 1036066. The provisions of an administrative rule should be read in connection with and in relation to each other, so that the rule itself may be interpreted as a whole. *Safeway*, 186 P.3d at 105.

## III. Application of Statutes

¶ 10 Claimant first contends that the ALJ erred by determining that CIRSA had no obligation to prepay his expenses under section 8–42–101, C.R.S.2012. We disagree.

¶ 11 Section 8–42–101(1)(a), C.R.S.2012, requires employers to furnish all reasonable and necessary medical care, treatment, or supplies to cure and relieve the employee from the effects of his or her industrial injury and throughout the course of any such disability. Section 8–42–101(4), C.R.S.2012, then provides that, once the employer's, or its insurer's, liability has been established, "a medical provider shall under no circumstances seek to recover such costs or fees from the employee."

¶ 12 Claimant maintains that his travel expenses represent services incident to his authorized medical care, and, therefore, the hotels and restaurants he patronizes in Vail qualify as medical providers within the meaning of section 8–42–101(4). Essentially, he argues that section 8–42–101(4) creates a statutory duty to refrain from billing an injured worker for any part of the authorized medical benefits and that such duty applies to his meals and lodging. We are not persuaded.

¶ 13 In arguing that the Vail restaurants and hotels that claimant patronizes qualify as "medical providers" under section 8–42–101(4), he relies on Department of Labor and Employment Rule 16–2(R), 7 Code Colo. Regs. 1101–3. That rule defines the term "provider" for purposes of both Rules 16 and 18 as "a person or entity providing authorized health care service, whether involving treatment or not, to a worker in connection with work-related injury or occupational disease." Although claimant argues that his meals and lodging are medical benefits because they are recoverable as services incident to his medical treatment, the rules do not define "health care service."

¶ 14 The ordinary, everyday meaning of the term "health care service" connotes a service provided to "maintain or restore health." *See Merriam—Webster Online Dictionary*, available at http://www.merriam-webster.com/dictionary (last visited July 25,

2013) (defining "health care"); *see also* § 10–16–102(22), C.R.S.2012 (defining "[h]ealth care services" for Colorado Health Care Coverage Act, §§ 10–16–101 to –1015, C.R.S. 2012, as any and all services for "the purpose of preventing, alleviating, curing, or healing human physical or mental illness or injury"). Further, Department of Labor and Employment Rule 16–5(A)(1), 7 Code Colo. Regs. 1101–3, identifies "recognized health care providers" and defines "non-physician providers" as "those individuals who are registered or licensed by the State of Colorado Department of Regulatory Agencies, or certified by a national entity recognized by the State of Colorado," and fall within the specified list of twenty-one occupations, ranging from acupuncturists and pharmacists to massage therapists and professional counselors.

¶ 15 We reject claimant's assertion that section 8–42–101(4) applies, for two reasons. First, whether or not claimant's lodging and meals technically qualify as medical benefits for purposes of compensability, the tangential relationship they hold to claimant's treatment logically precludes their classification as health care services. Second, restaurants and hotels cannot be considered "health care providers," either under the commonsense meaning of that term or under Rule 16–5(A)(1)'s specific definition. *Cf. Safeway*, 186 P.3d at 106–07 (holding that the plain language of the rules patently indicates that a claimant or injured worker is not a "provider" for purposes of submitting mileage reimbursement requests within the presumptive deadline applied to bills for services). Notwithstanding claimant's assertions to the contrary, the rules, including Rule 16–2(R), establish that section 8–42–101(4)'s restriction preventing "medical providers" from seeking payment from an injured worker does not apply to the restaurants or hotels that claimant patronizes when he is in Vail for treatment with the specialist.

¶ 16 Claimant argues that narrowly construing "medical provider," as that term is used in section 8–42–101(4), defeats the remedial and beneficent purposes of the Workers' Compensation Act, leading to an unnecessarily harsh and absurd result in cases such as his where he has suffered financial hardship as a result of his injury. However, reimbursement of travel costs under Rule 18–6(E) accounts for the possibility that an injured worker may cancel an appointment or spend less than anticipated. The record also shows that claimant did not have to forego treatment, and that CIRSA reimbursed him within thirty days for his expenses (which he had paid by credit card), thus minimizing any financial burden.

¶ 17 Other divisions of this court have applied a narrow statutory interpretation when determining whether a particular service or apparatus is medical in nature, and, therefore, compensable under section 8–42–101(1)(a). *See Kuziel v. Pet Fair, Inc.*, 931 P.2d 521, 522 (Colo.App.1996) (applying narrow statutory interpretation used by prior divisions to determine that child care services are not a compensable medical benefit). The omission of a prepayment requirement in sections 8–42–101(1)(a) and 8–42–101(4) contrasts with section 8–43–404(1)(b), C.R.S. 2012, which expressly provides for the advancement of an employee's estimated expenses, including "transportation, mileage, food, and hotel costs," when the employee must undergo an independent medical examination at the employer's request.

¶ 18 The out-of-state authorities relied on by claimant are inapposite because they either involve the prepayment of a readily recognizable medical service or address the prepayment of mileage, which CIRSA has consistently advanced.

### IV. Application of Rule 18–6(E)

¶ 19 Claimant next contends that the ALJ and Panel erred in determining that Rule 18–6(E) was dispositive of the issue presented here. The ALJ and Panel interpreted the rule to require only reimbursement—and not prepayment—of expenses for lodging and meals. According to claimant, however, the rule applies exclusively to mileage expenses, which are not at issue here, and is silent regarding overnight accommodations and meals, and thus is inapplicable. We disagree with claimant's interpretation of Rule 18–6(E), and we conclude that that rule controls here.

¶ 20 Claimant is correct that Rule 18–6(E) refers to the reimbursement of mileage expenses only, and makes no direct reference to expenses for meals or lodging. However, the rule's directive requiring the injured worker to submit a statement showing the number of miles and dates traveled, with "receipts for any other reasonable and necessary travel expenses incurred," plainly contemplates reimbursement of travel expenses such as meals and lodging. Because no reasonable argument can be made against categorizing meals and lodging as "other travel expenses," Rule 18–6(E) allows them to be reimbursed even though it does not expressly mention them. Thus, the ALJ and Panel correctly applied Rule 18–6(E) to preclude claimant's contention that CIRSA had to prepay his expenses for meals and lodging.

### V. Alleged Contractual Duty to Prepay

¶ 21 Claimant finally contends that CIRSA is contractually bound to prepay his meal and lodging expenses. Again, we disagree.

¶ 22 Claimant argues that CIRSA's prepayments of expenses for meals and lodging for his first three visits to the specialist, and his acceptance of those prepayments, evidence CIRSA's contractual agreement to prepay all of his travel expenses. The Panel rejected claimant's contractual theory, concluding that the law governing express or implied-in-fact contracts did not apply, and that the ALJ's findings regarding CIRSA's prepayments of hotel and meal expenses merely demonstrated the processing and adjusting of claimant's claim. Because the record does not support the making of an implied contract, the Panel's analysis is correct.

¶ 23 A contract implied in fact arises from the parties' conduct that evidences a mutual intention to enter into a contract, and such a contract has the same legal effect as an express contract. *Agritrack, Inc. v. DeJohn Housemoving, Inc.*, 25 P.3d 1187, 1192 (Colo.2001). To be enforceable, a contract requires mutual assent to an exchange for legal consideration. *See Indus.*

*Prods. Int'l, Inc. v. Emo Trans, Inc.*, 962 P.2d 983, 988 (Colo.App.1997).

¶ 24 Here, claimant has cited no testimony or other evidence that he reached any such agreement with CIRSA. And, contrary to his assertion on appeal that he relied on this alleged agreement, claimant did not demonstrate the mutual assent or legal consideration necessary to the formation of an enforceable contract. Consequently, the Panel properly concluded that CIRSA's prepayments represented nothing more than claim processing and adjustment.

¶ 25 Because claimant did not prove the existence of an implied contract, we need not review the Panel's determination that any such agreement was a settlement that had to be in writing, signed, and sworn to be enforceable under section 8–43–204, C.R.S.2012.

¶ 26 Thus, the ALJ and the Panel properly determined that the Act imposed no obligation on CIRSA to prepay claimant's travel expenses.

¶ 27 We recognize the potential harshness of this result, particularly for a claimant who simply cannot afford to advance substantial costs for lodging and meals in advance of reimbursement by an insurer. However, as claimant aptly points out in his opening brief, courts cannot rewrite statutory or administrative rules under the guise of interpretation. *See Bunch v. Indus. Claim Appeals Office*, 148 P.3d 381, 385 (Colo.App. 2006) ("Claimant's arguments that the [Workers' Compensation] Act is unfair or that the result is contrary to public policy amount to a request for a change of statutory law. Absent constitutional infringement, it is not our province to rewrite statutes.").

¶ 28 Although the record here shows that claimant was able to charge these costs to his credit card, and was reimbursed by CIRSA within thirty days of incurring such expenses, and thus he does not appear to have been substantially harmed, not all claimants may have such resources at their disposal. The Division of Workers' Compensation may wish to address this issue in a rule.

¶ 29 The order is affirmed.

JUDGE LOEB and JUDGE MÁRQUEZ * concur.