2013 COA 176

**Charles BARRY, Plaintiff–Appellant,**

v.

**BALLY GAMING, INC., d/b/a Bally Technologies, a Nevada corporation; and CCSC/Blackhawk, Inc., d/b/a Lady Luck Casino Black Hawk, a Colorado corporation, Defendants–Appellees.**

**Court of Appeals No. 13CA0093**

Colorado Court of Appeals,
Div. VI.

Announced December 19, 2013

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2013.

Stoneman O'Connell, Todd Stoneman, Ann O'Connell, Longmont, Colorado, for Plaintiff–Appellant.

Dill Dill Carr Stonbraker & Hutchings, PC, Daniel W. Carr, Denver, Colorado, for Defendant–Appellee Bally Gaming, Inc.

Brownstein Hyatt Farber Schreck, LLP, Mark T. Barnes, Carrie E. Johnson, Denver, Colorado, for Defendant–Appellee CCSC/Blackhawk, Inc.

Opinion by JUDGE GABRIEL

¶ 1 Plaintiff, Charles Barry, appeals the district court's dismissal of his claims against defendants, Bally Gaming, Inc., d/b/a Bally Technologies (Bally) and CCSC/Blackhawk, Inc., d/b/a Lady Luck Casino Black Hawk (Lady Luck), for lack of jurisdiction over those claims. We conclude that (1) the district court correctly concluded that Barry's claims fall within the original and exclusive regulatory jurisdiction of the Colorado Limited Gaming Control Commission (the Commission), and (2) Barry has failed to show that exhaustion of his administrative remedies would be futile or would involve questions of law outside the agency's expertise or capacity to resolve. Accordingly, we affirm.

## I. Background

¶ 2 Barry alleges that he played a slot machine manufactured by Bally in a casino owned and operated by Lady Luck. He asserts that the machine indicated that he had won $31,202.41 but that a casino employee told him that the machine had malfunctioned. Accordingly, pursuant to a small plaque on the machine stating "malfunction voids all pays and plays," defendants refused to pay Barry the $31,202.41.

¶ 3 Barry challenged defendants' position, and the Department of Revenue's Division of Gaming (Division) investigated the incident. The Division ultimately determined that the machine had, in fact, malfunctioned and that Barry was not entitled to the jackpot amount but rather had actually won just eighty cents. Barry sought review of the Division's decision by the Commission, but before the Commission had issued a final written decision, Barry filed the present lawsuit in district court.

¶ 4 In this lawsuit, Barry brought claims against defendants for extreme and outrageous conduct, breach of implied contract, and violations of the Colorado Consumer Protection Act (CCPA), §§ 6–1–101 to –1121, C.R.S.2013. In support of his outrageous conduct claim, he alleged that Lady Luck's "revocation of the super jackpot" caused him severe emotional distress, and he sought money damages arising from Lady Luck's conduct. In support of the contract claim, he alleged that "Bally and Lady Luck breached their contract with [him] by failing to . . . pay out the super jackpot that their [machine] displayed as Barry's prize." And in support of his CCPA claim, he alleged that defendants do not inform patrons who lose when playing a slot machine if their loss was due to a machine malfunction but that defendants refuse to pay when a patron's win is caused by a malfunction. Barry thus sought monetary damages of $93,607.23, representing three times the amount of the super jackpot that he claims defendants improperly refused to pay him.

¶ 5 Defendants moved to dismiss Barry's claims pursuant to C.R.C.P. 12(b)(1). As pertinent here, defendants argued that (1) the Commission had exclusive authority to resolve disputes related to limited gaming, (2) only the Colorado Court of Appeals has jurisdiction to conduct a judicial review of the

Commission's action, and (3) this judicial review may be conducted only after Barry has exhausted his administrative remedies.

¶ 6 The district court granted defendants' motion, concluding that the court lacked jurisdiction over Barry's claims because the Commission has original and exclusive jurisdiction and the administrative expertise to resolve a dispute between a casino and a patron related to limited gaming. The court further noted that after exhausting his administrative remedies, which Barry had not yet done, his remedy would be to seek judicial review in the Colorado Court of Appeals.

¶ 7 Barry now appeals.

## II. Standard of Review

¶ 8 In considering a motion to dismiss for lack of subject matter jurisdiction pursuant to C.R.C.P. 12(b)(1), a district court examines the substance of the claim based on the facts alleged and the relief requested. *City of Aspen v. Kinder Morgan, Inc.,* 143 P.3d 1076, 1078 (Colo.App.2006). "The plaintiff has the burden of proving jurisdiction, and evidence outside the pleadings may be considered to resolve a jurisdictional challenge." *Id.* When, as here, "all relevant evidence is presented to the trial court, and the underlying facts are undisputed, the trial court may decide the jurisdictional issue as a matter of law, in which case appellate review is *de novo.*" *Medina v. State,* 35 P.3d 443, 452 (Colo.2001).

¶ 9 We review the construction of statutes and administrative regulations de novo. *Winter v. Indus. Claim Appeals Office,* 2013 COA 126, ¶¶ 8–9, 321 P.3d 609, 2013 WL 4163613. We first look to the language of the statute or regulation and analyze the words and phrases according to their plain and ordinary meanings. *See Berumen v. Dep't of Human Servs.,* 2012 COA 73, ¶ 19, 304 P.3d 601, 606 (regulations); *People v. Daniels,* 240 P.3d 409, 411 (Colo.App.2009) (statutes). We read and consider the statute or regulatory scheme as a whole and interpret it in a manner giving consistent, harmonious, and sensible effect to all of its parts. *See Berumen,* ¶ 19, 304 P.3d at 606 (regulations); *Daniels,* 240 P.3d at 411 (statutes). If the language of a statute or regulation is clear

and unambiguous, we do not resort to other rules of construction. *Berumen,* ¶ 19, 304 P.3d at 606.

## III. Outrageous Conduct and Contract Claims

¶ 10 Barry asserts that the district court erred in dismissing his outrageous conduct and contract claims because the Commission did not have exclusive jurisdiction over those claims. We are not persuaded.

¶ 11 Barry does not dispute that through the Limited Gaming Act of 1991, §§ 12–47.1–101 to –1707, C.R.S.2013 (the Act), the General Assembly vested in the Commission the authority to regulate limited gaming and that this regulatory power was intended to embrace all aspects of the operation of gaming in Colorado. *See People v. Warner,* 930 P.2d 564, 568 (Colo.1996) ("The Act creates a comprehensive and thorough regulatory scheme to control all aspects of limited stakes gambling in Colorado."); *Purcell v. Colo. Div. of Gaming,* 919 P.2d 905, 907 (Colo.App.1996) ("[Section] 12–47.1–302, C.R.S. ... squarely vests in the Commission the authority to regulate limited gaming.").

¶ 12 Nor does Barry appear to dispute that the Commission has exclusive jurisdiction to decide matters falling within its regulatory authority and expertise. Indeed, he asserts that the Commission exercised its expertise in issuing its findings and that he is not challenging those findings here.

¶ 13 Barry contends, however, that his outrageous conduct and contract claims do not fall within the Commission's regulatory authority and expertise because (1) the Act and applicable regulations are licensee-directed rules that do not attempt to define the rights that patrons may have against those licensees; and (2) the Commission's authority to adjudicate a patron dispute is limited to the instance in which a licensee refuses payment of alleged winnings to a patron, and this is not such a dispute. The Act, regulations, and Barry's pleadings, however, show otherwise.

¶ 14 Subsection 12–47.1–302(1), C.R.S. 2013, provides, in pertinent part:

[T]he commission shall … have the following powers and duties:

(a) To promulgate such rules and regulations governing the *licensing, conducting, and operating of limited gaming* as it deems necessary to carry out the purposes of this article. The director shall prepare and submit to the commission written recommendations concerning proposed rules and regulations for this purpose.

(b) *To conduct hearings* upon complaints charging violations of this article or rules and regulations promulgated pursuant to this article, and to conduct such other hearings as may be required by rules of the commission.

(Emphasis added.)

¶ 15 Pursuant to the Act, the Division enacted a regulation entitled "Patron disputes." This regulation provides:

In a patron dispute, a licensee must notify the disputing patron that the patron has a right to contact the Division regarding the dispute.

If a licensee refuses payment of alleged winnings to a patron, the licensee and the patron are unable to resolve the dispute to the patron's satisfaction, or the dispute involves at least $250, the licensee must immediately notify the Division. The Director shall conduct whatever investigation is necessary and must determine whether or not payment should be made. An agent of the Division may investigate the dispute and may report either to the Commission or to the Director for a decision.

The Director must notify the licensee and the patron in writing of the Director's decision regarding the dispute, within five business days after the completion of the investigation.

Failure immediately to notify the Director of a dispute, or to notify a patron of the patron's rights or failure to pay after an adverse decision, is a violation by the licensee.

Dep't of Revenue, Div. of Gaming, 1 Code Colo. Regs. 207–1:47.1–417.

¶ 16 The Act and the patron disputes regulation thus provide a mechanism by which a patron can (1) adjudicate a claim that a gaming licensee improperly refused to pay alleged winnings to the patron, and (2) recover such winnings.

¶ 17 Contrary to Barry's contention, the Act and the patron disputes regulation are not directed solely to the rights of licensees. Indeed, the regulation specifically authorizes the Commission to decide "whether or not payment should be made" by the licensee to the patron. *Id.*

¶ 18 Moreover, Barry's outrageous conduct and contract claims present precisely the type of patron dispute governed by the Act and the patron disputes regulation. Specifically, both claims assert that defendants refused to pay a jackpot that Barry believed he had won, and he seeks monetary damages arising from this failure to pay. *See id.*

¶ 19 Accordingly, we conclude that the district court correctly ruled that Barry's outrageous conduct and contract claims fell within the Commission's exclusive regulatory authority and properly dismissed those claims. *See Cowsert v. Greektown Casino, L.L.C.,* No. 260496, 2005 WL 1633725, at *1–2 (Mich. Ct.App. July 12, 2005) (unpublished opinion) (concluding, in a case in which the plaintiff asserted claims for breach of contract and negligence arising from a casino's failure to pay a slot machine jackpot that the plaintiff claimed to have won, that the trial court lacked subject matter jurisdiction because (1) the legislature intended to vest exclusive jurisdiction over all matters relating to the licensing, regulating, monitoring, and control of the non-Indian casino industry in the state's gaming commission; and (2) the plaintiff was not entitled to pursue common law claims that were inconsistent with the state's gaming control and revenue act); *Papas v. Mich. Gaming Control Bd.,* 257 Mich.App. 647, 669 N.W.2d 326, 332 (2003) (concluding that the legislature vested the state's gaming control board with exclusive jurisdiction over all matters relating in any way to the licensing, regulating, monitoring, and control of the non-Indian casino industry); *Grand Casino Tunica v. Shindler,* 772 So.2d 1036, 1038–40 (Miss.2000) (concluding that the state's gaming commission had exclusive authority over the plaintiff's claims where (1)

the plaintiff asserted that he was entitled to additional winnings for a series of mini-baccarat games, (2) the commission had exclusive jurisdiction over "gaming debts" and "alleged winnings," and (3) plaintiff's claims fell "squarely within" the statutory definitions of "gaming debts" and "alleged winnings").

¶ 20 We are not persuaded otherwise by Barry's assertion in his reply brief that his outrageous conduct and contract claims were not within the Commission's exclusive regulatory authority because these claims sought damages for the emotional roller coaster that Barry was forced to ride when he thought he had won. As noted above, these claims sought damages arising from defendants' refusal to pay the jackpot amount that Barry believed he had won, and this is precisely the type of claim encompassed by the Act and the patron disputes regulation. Barry cites no applicable authority, and we have seen none, suggesting that he can avoid the Commission's exclusive regulatory authority merely by claiming a right to different or greater monetary damages than the Act and regulations allow.

### IV. CCPA Claim

¶ 21 Relying on *Showpiece Homes Corporation v. Assurance Company of America*, 38 P.3d 47 (Colo.2001), Barry next contends that the district court erred in concluding that his CCPA claim was within the Commission's exclusive jurisdiction. Again, we are not persuaded.

¶ 22 In *Showpiece Homes*, 38 P.3d at 50–55, our supreme court considered whether a CCPA claim by insureds against an insurer was preempted by the Colorado Unfair Claims—Deceptive Practices Act (UCDPA), which regulates the insurance industry. There, the defendant argued that the plaintiffs' CCPA claim was preempted by the UCDPA because the comprehensive insurance regulations in the UCDPA governed unfair and deceptive acts or practices on the part of the insurance industry and effectively precluded CCPA claims. *Id.* at 51–52. The defendant further asserted that the General Assembly intended that the UCDPA be the exclusive means for defining, determining,

penalizing, and prohibiting deceptive practices in the insurance business. *Id.* at 52. The court, however, disagreed. *Id.* at 52–53.

¶ 23 As pertinent here, the court noted that the CCPA is a remedial statute that is intended to deter and prevent deceptive trade practices committed by businesses in dealing with the public and that it is to be liberally construed. *See id.* at 50–51. The court further observed that the CCPA was meant to work "in tandem with other regulatory provisions in the Colorado statutes." *Id.* at 49. Finally, the court noted that although the UCDPA provided for the comprehensive regulation of insurance trade practices *in the regulatory context,* nothing in that statute indicated a legislative intent to provide the exclusive remedy for deceptive practices in the insurance industry. *Id.* at 52. The court thus rejected the defendant's assertion that the insurance regulations in the UCDPA foreclosed application of the CCPA to insurance companies. *Id.* at 55.

¶ 24 We do not read *Showpiece Homes* as holding that a statute providing for the comprehensive regulation of an industry in the regulatory context can never bar a CCPA claim, as Barry appears to suggest. Were that the case, a plaintiff could always avoid an agency's exclusive regulatory authority merely by labeling a regulatory claim as a CCPA claim. Rather, the propriety of the district court's dismissal of Barry's CCPA claim turns on whether Barry has asserted a CCPA claim that was distinct from a claim falling within the Commission's exclusive regulatory jurisdiction. We conclude that he has not done so.

¶ 25 Barry's CCPA claim alleged that defendants do not inform patrons who lose when playing a slot machine if their loss was due to a machine malfunction but that defendants refuse to pay when a patron's win is caused by a malfunction. Based on this allegation, pursuant to section 6–1–113(2)(a)(III), C.R.S.2013, Barry sought to recover three times the jackpot amount that he claims to have won.

¶ 26 In other words, Barry's CCPA claim essentially alleged that due to a machine malfunction, defendants refused to pay him

the jackpot that he believed he had won and that he is thus entitled to recover damages for defendants' failure to pay. For the reasons set forth above, this is precisely the kind of patron dispute covered by the Act and the patron disputes regulation.

¶ 27 Accordingly, we conclude that the district court correctly ruled that the Commission had original and exclusive jurisdiction over Barry's CCPA claim and properly dismissed that claim. *See City of Aspen*, 143 P.3d at 1080–81 (concluding that although the plaintiff's claims alleged unfair trade practices described in the CCPA, the claims involved the specific and exclusive ratemaking jurisdiction of the Public Utilities Commission, and thus the plaintiff could not bring his CCPA claims).

## V. Exhaustion of Administrative Remedies

¶ 28 Barry next asserts that even if he were required to pursue his administrative remedies, exhaustion here was unnecessary because (1) the matter in controversy raised questions of law that were not within the Commission's expertise or capacity, and (2) further administrative review before the Commission would have been futile. We are not persuaded.

¶ 29 "The doctrine of administrative exhaustion requires a party to pursue available statutory administrative remedies before obtaining judicial review of a claim." *Thomas v. Fed. Deposit Ins. Corp.*, 255 P.3d 1073, 1077 (Colo.2011). "Where a party fails to exhaust these remedies, a trial court is without jurisdiction to hear the action." *Id.* This doctrine, however, is subject to limited exceptions, including (1) when the controversy involves questions of law that are not within the agency's expertise or capacity to determine, and (2) when it is clear beyond a reasonable doubt that pursuit of relief from the agency would be futile. *Id.*

¶ 30 Here, Barry argues that the controversy involves a question of law that is beyond the Commission's expertise and capacity because it centers on outrageous conduct, contract, and CCPA claims. We, however, have concluded that those claims center not on questions of law but on factual issues falling squarely within the Commission's regulatory authority and expertise. *See* § 12–47.1–302(1)(a)–(b), C.R.S.2013.

¶ 31 Moreover, although Barry makes conclusory assertions that proceeding before the Commission would be futile, we see nothing in the record that would allow us to draw such a conclusion.

¶ 32 Finally, even had Barry exhausted his administrative remedies, the proper procedure would have been for him to file an appeal in this court, not to file a separate action in the district court. *See* § 12–47.1–521, C.R.S.2013 ("Any person aggrieved by a final action of the commission may appeal the final action to the court of appeals pursuant to section 24–4–106, C.R.S."); *see also* § 24–4–106(11)(a)–(b), C.R.S.2013 (providing that whenever judicial review of any agency action is directed to the court of appeals, "[s]uch proceeding shall be commenced by the filing of a notice of appeal with the court of appeals ..."); *Bd. of Cnty. Commis. v. City of Black Hawk*, 2012 COA 172, ¶ 15, 292 P.3d 1172, 1175 ("We conclude the plain meaning of section 12–47.1–521, read with section 24–4–106(11), is that the review of all final actions of the Commission, including rule-making actions, is to be sought solely in the court of appeals.").

¶ 33 Accordingly, we conclude that Barry has not exhausted his administrative remedies and that his argument is insufficient to save his complaint in the district court.

## VI. Attorney Fees

¶ 34 Defendants seek to recover their fees on appeal, arguing that Barry's appellate arguments are frivolous and groundless. We deny defendants' request because Barry's appellate arguments raised significant and difficult jurisdictional questions and were not frivolous or groundless. *See Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 299 (Colo.App. 2009) ("A claim is not frivolous ... if it is meritorious but merely unsuccessful; if it is a legitimate effort to establish a new theory of law; or if it is a good faith effort to extend, modify, or reverse existing law.").

**394**

### VII.  Conclusion

¶ 35 For these reasons, the judgment is affirmed.

JUDGE FURMAN and JUDGE ROTHENBERG * concur.