507 P.3d 1025
2022 COA 7
Sally A. MCLELLAN, Plaintiff-Appellant,
v.
COLORADO DEPARTMENT OF HUMAN SERVICES and Larimer County Department of Human Services, Defendants-Appellees.
Court of Appeals No. 20CA1217
Colorado Court of Appeals, Division IV.
Announced January 6, 2022
Squire Patton Boggs (US) LLP, Keith Bradley, Scheleese Goudy, Denver, Colorado, for Plaintiff-Appellant
Philip J. Weiser, Attorney General, Aaron J. Pratt, Assistant Attorney General, Denver, Colorado, for Defendant-Appellee Colorado Department of Human Services
Gordon P. McLaughlin, District Attorney, Andrew Lewis, Deputy District Attorney, Fort Collins, Colorado; Jeannine Haag, County Attorney, David P. Ayraud, Deputy County Attorney, Fort Collins, Colorado, for Defendant-Appellee Larimer County Department of Human Services
Opinion by JUDGE TOW
¶ 1 Appellant, Sally A. McLellan, appeals the district court's judgment upholding the decision of the Colorado Department of Human Services (the Department), through its Office of Appeals, allowing the Larimer County Department of Human Services (Larimer County) to retain a Supplemental Security Income (SSI) benefit back payment as reimbursement for interim assistance provided to McLellan. McLellan contends that Larimer County's entitlement to direct reimbursement was limited to funds from the first check issued to McLellan by the Social Security Administration (SSA). Thus, McLellan argues, because the reimbursement provided to Larimer County did not come from the "first retroactive SSI payment" sent by the SSA, Larimer County wrongfully received the funds. We conclude, as a matter of first impression, that the "first SSI benefit payment" from which the reimbursement may be withheld is the entire balance of the retroactive amount the SSA initially determines to be due an applicant, not the first installment check issued to pay that retroactive amount. Consequently, Larimer County properly received the SSI distribution. We therefore affirm the district court's judgment, albeit on different grounds.
507 P.3d 1028 I. Background
¶ 2 McLellan is disabled. In 2007, she applied for SSI benefits from the SSA. Her request was not approved until 2017. While awaiting approval from the SSA, McLellan applied for interim assistance from Larimer County.
A. The Interim Assistance Reimbursement Program ¶ 3 In cases such as McLellan's, an individual whose application for SSI benefits has not yet been approved may receive interim assistance from her county human services department under the Aid to the Needy Disabled – State Only (AND-SO) program. § 26-2-111(4), C.R.S. 2021; Dep't of Hum. Servs. Reg. 3.540, 9 Code Colo. Regs. 2503-5 (effective Sept. 1, 2018 to Oct. 31, 2018) (hereinafter AND-SO Regulation). A county may then be reimbursed by the SSA for these AND-SO payments pursuant to the Interim Assistant Reimbursement Regulation, Dep't of Hum. Servs. Reg. 3.546, 9 Code Colo. Regs. 2503-5 (effective Mar. 2, 2014 to Feb. 29, 2020) (hereinafter IAR Regulation). The IAR Regulation details how a county is reimbursed for the interim assistance it provided to an individual. As a condition of receiving AND-SO benefits, applicants are required annually to sign an Authorization for Reimbursement of Interim Assistance (IM-14) form. Id. at Reg. 3.546(A)(2). The IM-14 authorizes the county to recover the funds from the "first retroactive SSI payment." Id.
B. The Reimbursement
¶ 4 In 2012, Larimer County began providing McLellan monthly assistance payments through the AND-SO program. In 2017, the SSA determined that McLellan was eligible for SSI benefits beginning in 2012 and found that she was due $30,402.90 in back payments for the period between 2012 and 2017. On March 14, 2018, McLellan received her first disbursement from the SSA in the amount of $2,250. She received a second disbursement for the same amount on September 5, 2018. On the same day, Larimer County received a check from the SSA in the amount of $11,571. This check reimbursed Larimer County for the interim assistance it had provided to McLellan. Larimer County notified McLellan that it had received the reimbursement.
C. The Administrative Proceedings
¶ 5 McLellan requested a hearing before the Office of Administrative Courts (Administrative Court), alleging that (1) she never authorized Larimer County to keep any portion of her back payment award; (2) any authorization she may have given was invalid or had expired; and (3) Larimer County was not entitled to keep the $11,571 because it was not the initial SSI back payment. The Administrative Court issued an initial decision finding that Larimer County was entitled to keep the money. McLellan appealed the initial decision to the Department's Office of Appeals. In a final decision, the Department, through its Office of Appeals, affirmed the initial decision of the Administrative Court. McLellan sought judicial review under the State Administrative Procedure Act (APA), section 24-4-106, C.R.S. 2021, and the district court upheld the final decision. McLellan now appeals the district court's order.
¶ 6 On appeal, McLellan argues that (1) Larimer County "improperly withheld the third retroactive SSI payment" and (2) the form authorizing Larimer County to recover money directly from a back payment was not valid. The Department, in turn, asserts that McLellan lacks standing to bring this appeal and that Larimer County was entitled to keep the disbursement. We reject the Department's standing challenge but affirm the district court's judgment upholding the final decision.
II. Review of Agency Decision Under the APA ¶ 7 On appeal from a district court's review of a final agency action, we apply the same standard of review as the district court — the standard set forth in section 24-4-106(7). § 24-4-106(7), (11)(e), C.R.S. 2021; Romero v. Colo. Dep't of Hum. Servs. , 2018 COA 2, ¶ 25, 417 P.3d 914. Agency actions are subject to reversal if they are arbitrary or capricious, a denial of statutory right, in 507 P.3d 1029 excess of statutory authority, or otherwise contrary to law. § 24-4-106(7)(b). ¶ 8 "In all cases under review, the court shall determine all questions of law and interpret the statutory ... provisions involved." § 24-4-106(7)(d). In construing an administrative rule or regulation, we apply the same basic rules of construction we use to interpret a statute. Petron Dev. Co. v. Wash. Cnty. Bd. of Equalization , 91 P.3d 408, 410 (Colo. App. 2003), aff'd , 109 P.3d 146 (Colo. 2005) ; see also Williams v. Colo. Dep't of Corr. , 926 P.2d 110, 112 (Colo. App. 1996). We first look to the ordinary and common meaning of the language in a provision, giving effect to every word and term. Lewis v. Taylor , 2016 CO 48, ¶ 13, 375 P.3d 1205. "If the statutory language is clear," we interpret the statute according to its plain and ordinary meaning. Id. at ¶ 20. "Where possible, the statute should be interpreted so as to give consistent, harmonious, and sensible effect to all its parts." People v. Dist. Ct. , 713 P.2d 918, 921 (Colo. 1986). ¶ 9 Similarly, when there is interplay between a statute and related regulations, we construe statutory and regulatory language as a whole, interpreting it in a manner giving consistent, harmonious, and sensible effect to all of its parts. Barry v. Bally Gaming, Inc. , 2013 COA 176, ¶ 9, 320 P.3d 387. When a state regulatory system serves to implement and complement a concomitant federal program, we must construe the state and federal regulations as a scheme. See Indus. Comm'n v. Bd. of Cnty. Comm'rs, 690 P.2d 839, 844 (Colo. 1984) ("[I]f the legislature intends that a state statutory scheme be administered in cooperation with and to conform to a concomitant federal enactment, the courts, in interpreting the state statute, should construe the state and federal statutes together to maintain institutional harmony."). ¶ 10 "An appellate court may ... affirm on any ground supported by the record." Taylor v. Taylor , 2016 COA 100, ¶ 31, 381 P.3d 428.
III. Standing ¶ 11 Initially, we address — and reject — the Department's argument that McLellan lacks standing to bring this appeal because "she suffered no injury" when Larimer County kept the reimbursement. ¶ 12 Whether a party has standing is a question we review de novo. Jones v. Samora , 2016 COA 191, ¶ 21, 395 P.3d 1165. To establish standing, a plaintiff must have (1) suffered injury in fact (2) to a legally protected interest. CO2 Comm., Inc. v. Montezuma County , 2021 COA 36M, ¶ 24, 491 P.3d 516. "Injury in fact exists if ‘the action complained of has caused or has threatened to cause injury.’ " Kreft v. Adolph Coors Co. , 170 P.3d 854, 857 (Colo. App. 2007) (quoting Romer v. Colo. Gen. Assembly , 810 P.2d 215, 218 (Colo. 1991) ). All averments of material fact in a complaint must be accepted as true when deciding whether a party has standing. Jones , ¶ 21.
¶ 13 In her complaint, McLellan alleged that "[t]he defendants sought, received, and retains [sic] $11,571.00 of my [SSI] back pay from the [SSA] without lawful authority to do so." This allegation of economic loss is sufficient to satisfy the requirement for an injury in fact. But the Department argues that, on appeal, McLellan concedes that she owes Larimer County the $11,571 and she therefore cannot establish injury. Not so. McLellan merely asserts that, if she owes the money to Larimer County, there are mechanisms available for Larimer County to recover the money from her. She has consistently maintained throughout the proceedings that she, and not Larimer County, was entitled to receive the third SSI distribution. Whether Larimer County would ultimately be able to recover that money from McLellan is immaterial to McLellan's claims and does not deprive her of standing in this matter.
IV. Retroactive Payment
¶ 14 McLellan contends that Larimer County improperly withheld the "third retroactive SSI payment." She argues that, under the IAR Regulation, Larimer County was only allowed to accept the first "payment" from the SSA; because the $11,571 was the 507 P.3d 1030 SSA's third distribution, she contends, that money should have been sent directly to her. We disagree.
¶ 15 The IAR Regulation sets forth the "SSI payment procedure" for the reimbursement of AND-SO payments. IAR Regulation at 3.546(A). It explains that the SSA will repay the county department for the interim assistance it provided to a client:
The accounting of payments made shall be entered in the federal SSA eIAR data system. SSA shall process the information and make a payment to the county department. SSA distributes the remainder, if any, to the client. Recoveries directly from a retroactive SSI payment can only be made from the first such payment.
Id. at Reg. 3.546(C).
¶ 16 McLellan argues that this language unambiguously establishes that a county department is only entitled to the very first distribution made by the SSA. The Administrative Court interpreted the regulation to mean that Larimer County could keep the $11,571 payment because, although it was the third distribution overall, it was the "first [payment] sent directly to the County Department." The district court determined that the agency's position was a fair and reasonable interpretation of the regulation.
¶ 17 We disagree with the analysis of both the Administrative Court and the district court. Nevertheless, we discern no basis to reverse the judgment.
¶ 18 Looking to the IAR Regulation, we note that it discusses at length the process for distributing and recovering an "SSI payment" or "SSI retroactive payment."[1] Id. at Reg. 3.546. But at the time these distributions were made, nothing in the IAR Regulation, or any other relevant state regulation, defined those terms. Nevertheless, the meaning of the terms becomes clear when we construe the state regulation in harmony with the federal regulatory and statutory provisions. ¶ 19 Title 20, Part 416 of the Code of Federal Regulations sets forth the regulations for the administration of SSI benefits. See 20 C.F.R. § 416.101 (2020). Subpart S, which contains the Interim Assistance Provisions, provides the following definition: "SSI benefit payment means your Federal benefit and any State supplementary payment made by us to you on behalf of a State ... which is due you at the time we make the first payment of benefits or when your benefits are reinstated after suspension or termination." Id. § 416.1902.[2] When an individual's retroactive SSI benefit payment exceeds a certain amount, the SSA will not pay the amount in a lump sum. Id. § 416.545(b). Instead, the agency issues installment payments in accordance with a specific formula:
Installment payments must be made if the amount of the past-due benefits, including any federally administered State supplementation, after applying § 416.525 (reimbursement to States for interim assistance) and applying § 416.1520 (payment of attorney fees), equals or exceeds 3 times the Federal Benefit Rate plus any federally administered State supplementation payable in a month to an eligible individual (or eligible individual and eligible spouse). These installment payments will be paid in not more than 3 installments and made at 6–month intervals. Except as described in paragraph (d) of this section, the amount of each of the first and second installment payments may not exceed the threshold 507 P.3d 1031 amount of 3 times the maximum monthly benefit payable as described in this paragraph.
Id. ; see also 42 U.S.C. § 1383(a)(10)(A) (similarly outlining a payment-by-installment procedure for "past-due monthly benefits," and providing that the installment schedule is determined "after any withholding for reimbursement to a State for interim assistance").
¶ 20 Under 20 C.F.R. § 416.525, the SSA may "withhold [SSI] benefits due with respect to an individual and may pay to a State ... from the benefits withheld, an amount sufficient to reimburse the State ... for interim assistance furnished on behalf of the individual." See also 42 U.S.C. § 1383(g).
¶ 21 As noted, when the SSA approved McLellan's claim for SSI, it determined that she was due $30,402.90. This amount constituted her first "SSI benefit payment." 20 C.F.R. § 416.1902. The SSA did not distribute this payment in one single lump sum. Instead, in 2018, the SSA began administering this payment consistent with the formula set forth in 20 C.F.R. § 416.545(b) and 42 U.S.C. § 1383(a)(10)(A), issuing the first two installments of this payment to McLellan in the amounts of $2,250 each.[3] (Whether McLellan received the balance of $14,331.90 is not apparent from the record but is not at issue here.)
¶ 22 As noted, 20 C.F.R. § 416.545(b) and 42 U.S.C. § 1383(a)(10)(A) require the SSA to withhold the money due to a state as reimbursement for interim assistance from the SSI benefit payment. Accordingly, at the time the SSA paid McLellan the second installment, it also reimbursed Larimer County the $11,571 that it had withheld from McLellan's first benefit payment.
¶ 23 McLellan argues that applying the definition of SSI benefit payment in this way is inconsistent with the "preamble" to the SSA's 1981 rule establishing that definition. Specifically, McLellan points to a statement made by the SSA in response to comment on the 1981 rule: "Only a first payment of benefits, not a final determination, is required for reimbursement." Supplemental Security Income for the Aged, Blind, and Disabled; Interim Assistance Provisions, 46 Fed. Reg. 47,447 (Sept. 28, 1981). But this statement was in response to a comment regarding whether the authorization for reimbursement should remain in effect if there is an appeal of the final determination. Id. It has no bearing on the issue before us, and certainly does not, as urged by McLellan, explicitly state that reimbursement must come from "the first check out the door."
¶ 24 In sum, reading the IAR Regulation in conjunction with the federal statutory and regulatory terms, we conclude that "first retroactive SSI payment" in the IAR Regulations means the first "SSI benefit payment" as defined in 20 C.F.R. § 416.1902. Accordingly, in March 2018, McLellan did not receive the "first retroactive SSI payment" — she received the initial installment of her first "SSI benefit payment" (or of her "first retroactive SSI payment").[4] And later, Larimer County received the portion of that first SSI benefit payment that had been withheld from McLellan and paid to Larimer County pursuant to 20 C.F.R. § 416.525 and 42 U.S.C. § 1383(g) as reimbursement for the interim assistance she had received.[5] 507 P.3d 1032 V. Authorization Form
¶ 25 McLellan next argues that the IM-14 form authorizing the reimbursement from her benefits was invalid because (1) neither Larimer County nor the Department signed the form and (2) it was expired. Thus, she contends, Larimer County did not have a valid agreement with her that allowed it to keep the $11,571. We reject both arguments.
A. Signature of a State Representative ¶ 26 On October 13, 2017, McLellan signed the IM-14 form, "authorizing the Commissioner of the Social Security Administration (SSA) to reimburse the State for some or all of the money the State gives [her]." State of Colorado, Authorization for Reimbursement of Interim Assistance , https://perma.cc/647Q-L9JK. There is no signature of a state representative on the form in the record. Under the IAR Regulation, only the client "shall be required" to sign the IM-14 form. IAR Regulation at 3.546(A)(2). But McLellan argues that an agreement between the SSA and the Department (the SSA-Colorado Agreement) requires a signature from both the individual and a state representative. She asserts that the SSA-Colorado Agreement "is a precondition ... to [Larimer County's] recovery from SSA payments" and "a governmental signature on the IM-14 ... is a prerequisite for a valid authorization." ¶ 27 McLellan provided what purports to be a copy of the SSA-Colorado Agreement as an attachment to her opening brief, but it is not contained in the record. The appellant bears the responsibility to designate the record on appeal. People v. Montgomery , 2014 COA 166, ¶ 22, 342 P.3d 593. Because our review is limited to the record on appeal, we will not consider documents attached to the opening brief that are not found in the record. People v. Henson , 2013 COA 36, ¶ 7, 307 P.3d 1135 ; see Fendley v. People , 107 P.3d 1122, 1125 (Colo. App. 2004) ("We are limited to the record presented and may consider only arguments and assertions supported by the evidence in the record."); Colo. Ass'n of Pub. Emps. v. Colo. Dep't of Pers. , 991 P.2d 827, 831 (Colo. App. 1999) (concluding that an affidavit that was not part of the administrative record would not be considered on appeal). ¶ 28 McLellan argues that we should consider the impact of the SSA-Colorado Agreement notwithstanding the fact that it is not in the appellate record. First, she argues that we can consider it merely because it is a "matter of public record" and "a source of law [that]," "like a regulation or statute, says what the law is here." But neither argument is compelling. The mere fact that something is a public record does not automatically make it subject to a court taking judicial notice of the record — particularly an appellate court, which does not engage in factfinding. For example, a court cannot take judicial notice of the contents of a municipal ordinance, even though such an ordinance is both a public record and a source of law. See Novak v. Craven , 195 P.3d 1115, 1119 (Colo. App. 2008).
¶ 29 We also reject McLellan's argument that we must consider the agreement because it was considered by the agency. Not so. The record clearly establishes that, while the existence of the agreement was established by testimony, no copy of the Colorado-SSA Agreement was provided to the Department.
¶ 30 In short, McLellan's claim that the IM-14 was invalid without a state representative signature on the SSA-Colorado Agreement is premised entirely on the SSA-Colorado Agreement itself. Because McLellan made no evidentiary record in the administrative proceedings that the SSA-Colorado 507 P.3d 1033 Agreement required the signature of a state representative on the IM-14, and thus the agreement is not in the record on appeal, we cannot consider it. Consequently, we reject this claim.
B. Expiration of the IM-14
¶ 31 McLellan next asserts that the IM-14 was expired by the time the SSA distributed the $11,571 to Larimer County in September 2018.
¶ 32 McLellan signed the form in October 2017. Under the IAR Regulation, "[t]he authorization shall be effective for a maximum of one (1) year from the date it was signed by the client." IAR Regulation at 3.546(A)(4). And according to the IM-14, the "authorization is in effect for [the client] and the State for twelve (12) months." Colorado, Authorization for Reimbursement . 20 C.F.R. § 416.1906(a) provides, however, that such an authorization remains in effect until the SSA "make[s] the first SSI benefit payment."
¶ 33 McLellan argues that her authorization expired in March 2018 when her "first payment" was made. But, as previously discussed, the March distribution was merely the first installment of her first SSI benefit payment. Therefore, the IM-14 did not expire at that point and was still valid when the SSA paid the second installment and disbursed the reimbursement funds in September 2018, less than one year after McLellan signed the authorization.
VI. Conclusion
¶ 34 The judgment is affirmed.
JUDGE J. JONES and JUDGE FREYRE concur.
--------
Notes:
[1] The IAR Regulation appears to use the terms "SSI payment" and "SSI retroactive payment" interchangeably. Dep't of Hum. Servs. Reg. 3.546, 9 Code Colo. Regs. 2503-5 (effective Mar. 2, 2014 to Feb. 29, 2020).
[2] None of the parties initially addressed the impact of this definition on our analysis. Moreover, after being invited to provide supplemental argument, no party asserts that this language is dispositive — or even relevant. Nevertheless, we are "not limited to the particular legal theories advanced by the parties, but rather retain[ ] the independent power to identify and apply the proper construction of governing law." Kamen v. Kemper Fin. Servs., Inc. , 500 U.S. 90, 99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) ; see also U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc. , 508 U.S. 439, 447, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) ("[A] court may consider an issue ‘antecedent to ... and ultimately dispositive of’ the dispute before it, even an issue the parties fail to identify and brief." (quoting Arcadia v. Ohio Power Co. , 498 U.S. 73, 77, 111 S.Ct. 415, 112 L.Ed.2d 374 (1990) )).
[3] The first two installments are limited to three times the maximum monthly payment. In 2018, that monthly payment amount was $750. Social Security Administration, SSI Federal Payment Amounts , https://perma.cc/4RS6-BJJP. Thus, each of the first two installments was limited to $2,250.
[4] McLellan sued the SSA in federal court, in part over the direct reimbursement. McLellan v. Comm'r, Soc. Sec. Admin. , Civ. A. No. 18-cv-00070-MSK, 2019 WL 7049992 (D. Colo. Dec. 22, 2019), aff'd , 843 F. App'x 97 (10th Cir. 2021). The federal district court did not reach the merits of McLellan's claims, instead dismissing her complaint due to lack of finality of the federal agency action. Id. at *4. Nevertheless, as conceded by McLellan's counsel at oral argument, our interpretation of the statute and regulations — that the first installment of the payment is not the first payment — is consistent with how the federal district court read the statute. See id. at *1.
[5] We note that if McLellan's reading — that the "first payment" means the first installment — is correct, a state could never directly recover more than three months’ worth of benefits. Thus, in every case in which it took more than three months for the SSA to process a benefits application, the state would be exposed to the danger of insufficient reimbursement. Given the substantial disincentive this would create to states participating in an AND-SO program, we cannot conclude that McLellan's construction was intended either by Congress or the General Assembly. See Supplemental Security Income for the Aged, Blind, and Disabled; Interim Assistance Provisions, 46 Fed. Reg. 47,447 (Sept. 28, 1981) (avoiding an interpretation that would result in a state "hesitat[ing] to provide any interim assistance ... on the grounds that it would ultimately be financing these benefits rather than [the SSA]"); see also Town of Erie v. Eason , 18 P.3d 1271, 1276 (Colo. 2001) ("[W]hen construing a statute, courts must not follow [a] statutory construction that leads to an absurd result" that would be "inconsistent with the purposes of the legislation.").
--------