Opinion by JUDGE BOORAS
¶ 1 Teller County and the Teller County WC Pool challenge an award of workers' compensation benefits to Michael Smith, a volunteer with the Teller County Search and Rescue (TCSAR). We affirm.
I. Background
¶ 2 Claimant, Michael Smith, is the president and the incident commander of TCSAR. He served TCSAR in other capacities for several years before his election as president. TCSAR is composed entirely of volunteers, including claimant, who receive no compensation for their service. TCSAR is on call at all times, and is under the jurisdiction of the Teller County Sheriff's Department. As president of TCSAR, claimant attends numerous meetings, including meetings of the fire chiefs, to prepare for disasters such as floods and fires.
¶ 3 On May 10, 2013, claimant left his home in Florissant to attend a fire chiefs meeting in Divide. Before departing, he contacted Teller County dispatch to "mark in service," thus notifying Teller County that he was en route to Divide for the fire chiefs meeting. As he was traveling to the meeting, he was struck head on by an approaching vehicle and sustained severe injuries.
¶ 4 He filed a claim for workers' compensation benefits, asserting that as a volunteer, he fell within the scope of the definition of "employee" set forth in section 8-40-202(1)(a)(I)(A), C.R.S.2014. Teller County contested the claim, however, arguing that the meeting claimant attended was not mandatory, and that he could not meet all of the statutory requirements necessary for a volunteer to be considered an employee under the Workers' Compensation Act (Act).
*569 ¶ 5 After conducting a hearing, the administrative law judge (ALJ) found that when the accident occurred claimant "was actively engaged in duties that would constitute activities that are 'proper for the performance' of duties with the search and rescue organization." In addition, the ALJ expressly found that claimant was the unit representative for a number of emergency response organizations, that he was "charged with coordinating assignments," and "attend[ed] meetings across Colorado." The ALJ further found that claimant's attendance at the meeting in question benefitted Teller County "by preparing the search and rescue organization to competently engage in search and rescue operations." Based on these findings, the ALJ concluded that claimant was an employee for purposes of section 8-40-202(1)(a)(I)(A), and therefore entitled to benefits.
¶ 6 Teller County petitioned for review, arguing that claimant's attendance at the meeting was volitional, not mandatory, and therefore should not be considered a sanctioned, covered activity. The Industrial Claim Appeals Office (Panel) disagreed, noting that it was "a custom and practice" in the county for the TCSAR president to attend the meetings. Consequently, the Panel concluded, claimant's attendance at the meeting was within the course and scope of his duties. The Panel therefore affirmed the ALJ's order.
II. Analysis
¶ 7 Teller County contends that (1) claimant's actions did not fall within the statutory definition of "employee" because he was driving to a meeting-not "actually performing duties" or "engaged in" an organized drill or training-when the accident occurred; (2) the Panel's inclusion of "planning and preparation" activities under the definition of employee broadened the scope of the provision beyond the General Assembly's intent; (3) the Panel engaged in improper fact finding in affirming the ALJ's decision; and (4) claimant's claim should have been barred by the "coming and going" rule. We are not persuaded by these arguments to set aside the Panel's order.
A. Statutory Definition of Employee
¶ 8 The Act defines "employee" to include:
volunteer rescue teams or groups, volunteer disaster teams, volunteer ambulance teams or groups, and volunteer search teams in any county, city, town, municipality, or legally organized fire protection district or ambulance district in the state of Colorado ... while said persons are actually performing duties as volunteer firefighters or as members of such volunteer rescue teams or groups, volunteer disaster teams, volunteer ambulance teams or groups, or volunteer search teams ... and while engaged in organized drills, practice, or training necessary or proper for the performance of such duties.
§ 8-40-202(1)(a)(I)(A).
¶ 9 We interpret statutory provisions de novo, and give " 'considerable weight' to the Panel's interpretation of the statute it administers." Zerba v. Dillon Cos., 2012 COA 78, ¶ 35, 292 P.3d 1051. We look first to the statute's plain language, giving that language its common meaning. People v. Jenkins, 2013 COA 76, ¶ 12, 305 P.3d 420. If the language is clear and unambiguous, we look no further and enforce it as written. Id.
¶ 10 The plain meaning of the statute makes clear that "employee" includes volunteer firefighters and volunteer search and rescue workers in certain circumstances. At oral argument, Teller County conceded that, although the statute uses the conjunctive, the statutory requirements for inclusion as an "employee" are satisfied by either "actually performing duties" or being "engaged in organized drills, practice or training" when an accident occurs. See Waneka v. Clyncke, 134 P.3d 492, 494 (Colo.App.2005) ("When interpreting a statute, a reviewing court may substitute 'or' for 'and,' or vice versa, to avoid an absurd or unreasonable result."). We agree that volunteer firefighters and volunteer search and rescue workers are "employees" under the statute when they are actually performing duties or when engaged in organized drills, practice, or training.
*570 ¶ 11 Attending fire chief meetings was part of claimant's position and duties as president of TCSAR. As a commander with the Teller County Sheriff's Office acknowledged, coordinating with the fire chiefs is "important," as is coordination between TCSAR and the Sheriff's Office, and that lack of coordination and planning would lead to ineffective preparation and response.
¶ 12 Other cases involving volunteers have reached similar conclusions. In one case, a division of this court upheld the Industrial Commission's finding of compensability for injuries sustained by a search and rescue volunteer while traveling by private plane to a meeting. See Colo. Civil Air Patrol v. Hagans, 662 P.2d 194, 196 (Colo.App.1983). The division noted that the commander testified that the volunteers were on duty "from the time they leave home to attend a meeting until they return." Id. Thus, traveling to attend a meeting has satisfied the "actually performing duties" component.
¶ 13 We also reject Teller County's contention that claimant's accident should not be covered because he was acting alone and not as a member of a group or team when he was heading to the meeting. Teller County offers no case law authority for this interpretation of the statute, and we know of no circumstance in which a volunteer was denied benefits simply because no other volunteers were engaged in the same injury-causing activity. On the contrary, whether a volunteer's injuries have been compensable has rested on a determination of the nature of the activities, rather than the number of volunteer participants. See, e.g., Nw. Conejos Fire Prot. Dist. v. Indus. Comm'n, 39 Colo.App. 367, 369, 566 P.2d 717, 719 (1977) (upholding benefits for volunteer firefighter's injuries sustained while acting as a flagman at motorcycle races).
B. The Panel's Interpretation of "Employee" Is Not Overly Broad
¶ 14 Teller County argues that the Panel's reliance on Hagans is misplaced because the claimant in Hagans was required to attend the training meeting, whereas claimant here chose to attend the meeting without any direction from the Sheriff's Office. The Panel held that this distinction was inconsequential, though, because claimant had a custom and practice of attending these meetings as president of TCSAR.
¶ 15 Teller County argues that looking to custom and practice expands the statutory language of "performing duties" beyond its plain meaning. However, contrary to Teller County's contention, a custom and practice of engaging in a particular activity can be considered part of a volunteer's regular duties, and injury during such activities can be compensable. Following decisions from other jurisdictions, a division of this court observed that "as a result of custom and practice, other activities, such as participation in patriotic celebrations, have become part of the normal activities of volunteer fire departments, and when injuries have occurred in the course of these activities, compensation has been allowed." Nw. Conejos Fire Prot. Dist., 39 Colo.App. at 369-70, 566 P.2d at 719-20 (where fire department's participation in patriotic celebration was customary, the activities came within the scope of employment of a volunteer fireman by "pattern or custom").
¶ 16 Nor are we persuaded by Teller County's argument that covering volitional acts will deprive it of its right to determine who is an employee. An agency can acquiesce in the compensability of certain acts by knowingly permitting them to occur. For example, in Capano v. Bound Brook Relief Fire Co. # 4, 356 N.J.Super. 87, 811 A.2d 510 (N.J.Super.Ct.App.Div.2002), the court affirmed an award of benefits to a ninety-three-year-old volunteer firefighter who underwent hip replacement surgery after falling while putting a log in a wood-burning stove. The claimant was no longer assigned any active duties, but instead "typically arrive[d] at the firehouse early each evening, clean[ed] up a little, and then 'watch[ed] TV and talk[ed] with the other members.' " Id. at 511. His visits were characterized as "essentially social." Id. Although the claimant had never been ordered or instructed to stoke the firehouse's wood-burning stove, his injuries were held compensable because the fire department acquiesced in his activity and *571 benefitted from the claimant's habit of keeping the fire burning. Id. at 513.
¶ 17 Similarly, in this case, the ALJ found, with record support, that claimant attended numerous meetings as president of TCSAR and regularly attended the fire chiefs meeting. On the day of the accident, he followed his usual custom and practice of "marking in service" as he was leaving his home for the meeting. Claimant testified that the meeting would include training and planning for the forthcoming fire season. A commander with the Teller County Sheriff's Office confirmed that it was "important" for TCSAR "to coordinate with the fire chiefs on a regular basis," and also to coordinate with the Sheriff's Office. Nothing in the record suggests claimant was ever instructed not to attend the various planning, training, and preparedness meetings. Because the commander acknowledged that prior coordination achieved at meetings assists Teller County's preparedness and responsiveness "during missions," Teller County admittedly benefitted from claimant's attendance at these meetings. Under the circumstances, we agree with the Panel that claimant and Teller County had a custom and practice by which claimant attended meetings in his capacity as president of TCSAR.
¶ 18 We therefore conclude that claimant was performing duties pursuant to a custom and practice in which Teller County acquiesced when he was involved in the accident. The Panel's interpretation of section 8-40-202(1)(a)(I)(A) finding such activity falls within the definition of "employee" is not inconsistent with the clear language of the statute or the legislature's statutory intent. See Pena v. Indus. Claim Appeals Office, 117 P.3d 84, 88 (Colo.App.2004) ("We give deference to the Panel's interpretation of workers' compensation statutes and will set that interpretation aside only if it is inconsistent with the clear language of the statute or the legislative intent."). The Panel thus did not err in finding claimant an "employee" at the time of his accident.
C. Fact Finding by the Panel
¶ 19 Teller County also argues that the Panel engaged in improper fact finding which warrants setting aside the Panel's order. Specifically, Teller County contends that the Panel improperly found that claimant "was ordered by the Sheriff's predecessor to attend the meetings and the current Sheriff never countermanded that order." Teller County argues that the record does not support this finding and that this fact was not addressed in the ALJ's order. We are not persuaded to set aside the Panel's order on this basis.
¶ 20 Teller County relies on City of Loveland Police Department v. Industrial Claim Appeals Office, 141 P.3d 943 (Colo.App.2006), for the principle that a reviewing court errs by
"parsing ... the record and testimony presented and making its own findings of fact in lieu of those made by the ALJ." ... Where the record supports the findings of the factfinder, the court of appeals is not at liberty to make an independent evaluation of the evidence and substitute its judgment for that of the factfinder.
Id. at 950 (quoting Bodaghi v. Dep't of Natural Res., 995 P.2d 288, 303 (Colo.2000) ). Rather, a reviewing court is bound by the ALJ's factual findings if those findings are supported by substantial evidence in the record; questions of law and application of the law to undisputed facts are reviewed de novo. See Winter v. Indus. Claim Appeals Office, 2013 COA 126, ¶ 7, 321 P.3d 609.
¶ 21 Teller County maintains that there is a discrepancy between the Panel's recitation of the facts and the record itself. The Panel stated that "claimant testified that Commander Bright's predecessor as the [TCSAR] contact at the sheriff's department had advised ... claimant to attend the Fire Chief's meeting." The actual exchange to which Teller County points in support of its contention that the Panel misconstrued the evidence was as follows:
A (claimant): If I may speak frankly, we were informed by the representative of the Sheriff's Office that we were covered if we were going to the [County Search and Rescue Board] meetings.
Q (Teller County's counsel): Who told you that?
*572 A: At the time it was Greg Griswold, [who] was the OEM [Office of Emergency Management liaison] for the Sheriff's Office.
Q: When you say "at the time," when was that time?
A: That was ever since I've been on the unit till I guess it was approximately six years ago. And then there was Jerry Kerr that took his position, and Jerry Kerr informed us of the same thing.
But, earlier in the hearing, claimant also testified:
Q (Teller County's counsel): The Sheriff's Department does not tell you you have to attend fire chief meetings; right?
A (claimant): They actually have told us-the former representative of the Sheriff's Office told us that we have to have a representative at the fire chiefs meetings.
Q: The representative of Teller County has not told you-the current representative of Teller County has not told you you have to be present at these fire chief meetings; correct?
A: Not since this past year or since Sheriff Ensminger has taken over, it's never been discussed.
In our view, this passage, which Teller County does not cite, squarely supports the Panel's recitation of the facts. The Panel did not identify the portion of the transcript on which it relied to set forth facts which Teller County finds objectionable. We note, however, that the passage which Teller County cites discusses claimant's understanding, based on conversations with previous Sheriff's Office contacts, that he was "covered" when he attended meetings, not whether he was instructed to attend the meetings by a representative from the Sheriff's Office. Based on this record, we disagree that the Panel exceeded its authority or improperly engaged in fact finding.
¶ 22 We note, too, that even if the Panel overstepped its authority, it affirmed the ALJ. In our view, the Panel was simply stating the facts as background information. In contrast, reviewing courts have been chastised for "parsing ... the record" to make their own findings of fact when those findings on appeal were used to set aside the order of an administrative agency. See Bodaghi, 995 P.2d at 303. Therefore, any impermissible factfinding the Panel engaged in-and we do not perceive any-explained the underlying facts and record; it did not cull facts with the purpose of disagreeing with the ALJ's findings and conclusion.
D. Coming and Going Rule Inapplicable
¶ 23 Finally, Teller County asserts that claimant's claim should have been barred by the "coming from and going to rule," which ordinarily denies workers benefits if they are injured coming from or going to work. See Madden v. Mountain W. Fabricators, 977 P.2d 861, 863 (Colo.1999). "In general, a claimant who is injured while going to or coming from work does not qualify for recovery because such travel is not considered to be performance of services arising out of and in the course of employment." Id. As Teller County acknowledges, however, exceptions to this general rule abound, and we agree with the Panel and the ALJ that when the accident occurred, claimant fell within a special circumstances exception to the Madden "coming from or going to" rule.
¶ 24 Madden held that
the proper approach is to consider a number of variables when determining whether special circumstances warrant recovery under the Act.
These variables include but are not limited to: (1) whether the travel occurred during working hours, (2) whether the travel occurred on or off the employer's premises, (3) whether the travel was contemplated by the employment contract, and (4) whether the obligations or conditions of employment created a "zone of special danger" out of which the injury arose.
Id. at 864. The Panel relied on Hagans, 662 P.2d 194, to conclude that claimant's travel fell within an exception to Madden. Indeed, Hagans ' facts fall squarely within the variables later identified in Madden.
¶ 25 In Hagans, injuries sustained by a search and rescue volunteer while he was traveling to a mandatory training meeting were compensable. Teller County argues that Hagans is factually distinguishable because the fire chiefs meeting to which claimant was traveling was not mandatory.
*573 ¶ 26 However, the Hagans division recognized that an employer can "expressly or impliedly" agree that the employment relation shall continue during the period of coming and going. Id. at 196. Likewise, Madden acknowledged that travel contemplated by employment could occur as the result of either an express or implied request by the employer. Madden, 977 P.2d at 864. The "common link" between situations that satisfy Madden 's third variable is that the travel "is a substantial part of the service to the employer." Id . at 865.
¶ 27 Here, claimant and Teller County had a custom and practice under which claimant regularly attended the fire chiefs meetings and notified Teller County that he would be doing so by "marking in service." While attendance was not technically "mandatory," Teller County knew claimant regularly attended these meetings, and acquiesced in his participation. See Capano, 811 A.2d at 513. Teller County, through the Sheriff's Office commander, conceded that it benefitted from claimant's attendance at these meetings because his participation enabled coordination between departments and facilitated smoother disaster responses. From the commander's testimony and the ALJ's factual findings, it is clear that attending these meetings comprised a great deal of claimant's time and involvement as president of TCSAR. Under the circumstances, we conclude that claimant's attendance at the fire chiefs meeting, including travel to the meeting, was contemplated as part of claimant's duties. Thus, the travel fell under the third Madden variable.
¶ 28 Accordingly, we conclude that claimant was an employee acting within the course and scope of his employment at the time of the May 10, 2013, automobile accident. The Panel therefore did not err in affirming the ALJ's award of benefits to claimant.
III. Conclusion
¶ 29 The order is affirmed.
JUDGE TAUBMAN and JUDGE GABRIEL concur.