## No. 20,836.

BONNIE TAYLOR, ET AL., *v.* ROSCOE PILE, JUDGE
OF THE COUNTY COURT OF JEFFERSON COUNTY, ETC., ET AL.
(391 P. [2d] 670)

Decided April 27, 1964.

Mrs. PATRICIA H. MALOY, for petitioners.

Mr. MARTIN P. MILLER, pro se.

Mr. Harry E. Carleno, for respondent Roscoe Pile.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

THIS is an original proceeding in which the petitioners seek relief by writ of prohibition directed to the respondents commanding that they take no further action in a case pending in the county court of Arapahoe county which involves the validity of proceedings for the incorporation of the town of Skyline Village.

Petitioners made numerous objections to the incorporation proceedings in the county court. We find it unnecessary to discuss all of them for the reason that those hereinafter mentioned are of such a serious nature as to require us to make the rule to show cause absolute.

The record now before us contains references to a contempt citation issued to Bonnie Taylor, together with actions on the part of the respondent Roy R. Vogt in connection therewith, and to numerous other matters unnecessary to discuss in full detail for the reason that the respondent court was without jurisdiction to enter the order which formed the basis of the contempt citation,

and was without jurisdiction to take any action on that cause pending in the court entitled, "In the Matter of the Incorporation of the Town of Skyline Village, Colorado," being Civil Action No. 16248 in said court, except to dismiss the petition of those seeking to bring about the incorporation of the "Village."

The statute which authorizes and governs the matter of incorporation of towns is C.R.S. '53, 139-1-1, et seq. as amended. The language thereof which is pertinent to the issue before us is as follows:

"When the inhabitants of any part of any county not embraced within the limits of any city or incorporated town shall desire to be organized into a city or incorporated town, they may apply by petition in writing, * * * to the county court of the proper county. *Such petition shall describe the territory proposed to be embraced in such city or incorporated town, and shall have annexed thereto an accurate map or plat thereof.* * * *" (Emphasis supplied.)

In March, 1963, there was filed in said county court an original and several duplicates of a petition, with maps attached, wherein an election to incorporate an area in Arapahoe county was sought. The boundaries on said maps had been altered in red pencil and in ink, and they bore the statement "Corrections by Eleanor Lowrey." The descriptions of said boundary lines as contained in the petition had been changed in ink, and some of such changes were initialed "E.L." Upon the filing of the petition as above indicated, the county court appointed a five member election commission which met and set the date for an election to be held March 26, 1963.

The petitioners now before us immediately filed a motion objecting to the jurisdiction of the court on several grounds, one of which was that the petition and maps were "inaccurate" and did not comply with the statute hereinabove quoted. Hearing was had on the motion, at which time it was established by the testimony of Eleanor Lowrey that changes in the southern and northern

boundary lines had been made by her and the attorney for the petitioners prior to filing but after the petition had been circulated and executed; that in fact such changes had been made the day the petition was filed with the court. She testified further that the changes were necessary because they had misapprehended the boundaries of the City and County of Denver. Counsel for petitioners informed the court that an effort had been made to translate the description in the petition onto the maps, and that such was impossible because the maps which had been submitted did not show necessary lot identifications, highway boundaries, section lines, etc. The trial court denied the motion.

Thereafter petitioner filed a motion to enjoin the election on the ground that the purported area encompassed within the coverage of the petition included a parcel of land which was then the subject of pending annexation proceedings, the inclusion of which precluded incorporation thereof prior to determination of the annexation proceedings under the provisions of C.R.S. '53, 139-11-9 which in pertinent part states:

"* * * no other proceedings shall be commenced or prosecuted for the annexation or incorporation of the same territory or any part thereof until the question of annexing such territory in pursuance of such petition or consent shall have been finally disposed of. * * *" (Emphasis supplied.)

At the hearing on this motion the proponents of incorporation admitted that there had been included in the area proposed for incorporation a tract of land which was the subject of pending annexation proceedings.

The county court denied the motion to enjoin the election, which was held on March 26, 1963. Three days thereafter the election commission appeared in court for the purpose of filing a return as required by 139-1-4 as amended. At such time counsel for petitioners filed a motion on behalf of one election commissioner and other

objectors, objecting to the filing of a return on the grounds that at the election said election commissioners had caused marked ballots to be used; that each of said ballots was numbered at the top; that as each elector was given a ballot his name was entered in a book opposite the number corresponding on the ballot; that said election commissioners had refused to permit electors to remove said numbers from the ballots as they were cast; that said procedure violated Secrecy of the Ballot guaranteed by the Constitution, Article VII, Section 8, and the oath of said commissioners. Article VII, Section 8 provides:

"All elections by the people shall be by ballot, and in case paper ballots are required to be used, no ballots shall be marked in any way whereby the ballot can be identified as the ballot of the person casting it. The election officers shall be sworn or affirmed not to inquire or disclose how any elector shall have voted. * * * "

The trial court denied the motion and accepted a handwritten uncertified return prepared in court by three of the five election commissioners. In said return, among other things, said election commissioners stated that there were 77 votes for and 77 votes against incorporation, and that one elector, the petitioner Bonnie Taylor, although challenged as residing outside the boundary lines, had cast a ballot. Counsel for said election commissioners and the proponents of incorporation asked that the court require Bonnie Taylor to appear and testify as to how she voted. The trial court ruled that, based on a return of 77 votes for and 77 votes against, the proceedings must be dismissed for failure of a majority of the electors to cast ballots favoring incorporation. The court further refused to require said Bonnie Taylor to appear and state how she voted, and in entering its order dispensed with motion for a new trial. The following morning the respondent judge called counsel for petitioners and informed her that he had changed his order

dispensing with the motion for a new trial and would permit such a motion to be filed.

Thereafter a motion for new trial was filed by three of the election commissioners, who also filed a "Motion to Reconsider Court's Decree." Six of the original seventy-nine signers of the petition for incorporation also filed a "Motion for a New Trial." The grounds upon which the motions were presented were that one Bonnie Taylor (one of the petitioners in this court) was permitted to cast a ballot at the said election; that she was not qualified to vote because she resided outside the area to be incorporated although her name appeared as one qualified to vote on the list of qualified voters certified to the election commission by the clerk and recorder of the county. Said motions prayed that said Bonnie Taylor be ordered to appear and testify as to whether she voted for or against the incorporation. The respondent court granted these motions and ordered that the case be continued "indefinitely until Mrs. Bonnie Taylor is brought before the Court." For reasons which we deem unnecessary to recite in this opinion, Bonnie Taylor did not appear and the court directed that a citation for contempt of court should be served upon her.

These proceedings were then commenced and we issued a rule to show cause, to which respondents have made answer. Two bound volumes of the record of proceedings in the county court action are before us containing 1180 folios, much of which is testimony taken before the trial court with relation to the several hearings on the many objections made to the legality of the petition and maps of the proponents of incorporation.

■ A major issue centers around the vote cast by Bonnie Taylor. A careful study of the record leads to the following undisputed factual situation: Bonnie Taylor presented herself at the polling place and requested a ballot in good faith, believing that she was entitled to vote; the election commissioners found her name on the list of qualified voters and gave her a ballot; there was

no legal challenge of her right to vote; it was cast under the belief that she was a qualified voter and she left the polling place unaware of the "challenge" which one of the commissioners made as to her qualification to vote after her ballot had been cast. This commissioner, by her own testimony, established the fact that she had failed to effectively and legally challenge the voter as prescribed by C.R.S. '53, 49-10-9 to 14. From the time Bonnie Taylor entered the polling place and found her name on the list of qualified voters until she left the polling place, she acted in good faith and believed, in fact, that she was qualified to vote.

The district attorney of Arapahoe county was granted leave to file a brief in this action and he has limited his presentation to two propositions, to-wit:

"I. An election wherein ballots are numbered in such a manner that the vote of any person thereafter may be determined by comparison with the number on the ballot and the poll registration book is contrary to the state of Colorado's constitutional and statutory guarantee of a secret ballot and, therefore, void ab initio." and

"II. A voter who has cast his ballot in good faith cannot be compelled, under the existing law of the State of Colorado, to disclose how he voted, particularly when the voter's name appeared on the registration books and when the voter was not challenged by the election judges."

We agree with each of these statements and will not lengthen this opinion with citations of authorities, which are plentiful, on propositions so fundamental to our system of government. The use of "marked ballots" by which the vote of every elector could be ascertained resulted in a void election.

Under the undisputed facts relating to the vote cast by Bonnie Taylor she was not an illegal voter. Under pertinent consitutional provisions (Article VII, Sec. 8) and legislative enactment (C.R.S. '53, 49-10-22) the secrecy

of the ballot is guaranteed the citizen. As stated in the statute:

"* * * none but ballots provided in accordance with the provisions of this chapter shall be counted.* * *"

In the "election" under consideration there were no ballots cast except "marked" ballots.

■■ The constitutional and statutory right to cast a secret ballot carries with it the accompanying right to refuse to testify as to how or for what the vote was cast. We readily agree that this protection does not extend to the "illegal" voter. But Bonnie Taylor was not an illegal voter. Assuming arguendo that the county court had jurisdiction to order an election, when the undisputed fact was made to appear that all the ballots cast were not secret ballots, it was the duty of the court to declare the election void. All proceedings and orders thereafter entered were void.

■ We address ourselves now to the question of whether the court ever acquired jurisdiction to order an election. An examination of the petition filed by the proponents of the plan to incorporate the village, a comparison of the description of the area to be included with the map attached to the petition, and the admitted fact that after the petition was fully prepared and signatures affixed thereto, changes were made in the description of the property to be included as set forth in the petition, and "corrections" were made in the boundary lines as shown on the map annexed to the petition, lead inescapably to the conclusion that said petition was fatally defective and conferred no jurisdiction upon the court to order an election.

The petition as presented to the court was not sufficiently clear to accurately advise substantial numbers of voters as to whether they were to be included or excluded from the proposed village. The map attached to the petition was not an "accurate" map of the area and the description of the area contained in the petition could not be reconciled with the map. These shortcom-

ings, as well as other matters not apparent on the face of the petition, were forcibly called to the attention of the county court. The petition was patently defective and insufficient on its face to confer jurisdiction upon the court.

■ We think it sufficient to direct attention to the following quotation from *McQuillen Municipal Corporations*, Vol. 1, Section 3.27 at pp. 558-60:

"The Legislature has power to authorize the inhabitants of a proposed municipality to designate the boundaries in their petition for incorporation. *The petition must contain an accurate description of the boundaries of the proposed municipal corporation. Failure of the petition for incorporation to properly set out the boundary to be incorporated has been held to make void the whole proceeding.*\* \* \*" (Emphasis supplied.)

It is likewise therein noted that:

"Accurate maps \* \* \* of the territory are frequently required to be attached to or filed with the petition, *and this requirement has been held to be jurisdictional.*" (Emphasis supplied.)

In *People v. South Platte District,* 139 Colo. 503, 343 P. (2d) 812, it was held that changes made in the boundary lines of a water district after circulation of the petition resulted in the entry of an order which was in excess of the court's jurisdiction. The statute requires that the description of lands to be included and the maps appended to the petition shall be "accurate." The most that can be said for these instruments as filed in the instant controversy is that they were almost accurate. This does not suffice.

The rule is made absolute.