2016 COA 191

**Maurice C. JONES and Citizen Center, a Colorado nonprofit corporation, Plaintiffs-Appellants,**

**v.**

**Christian R. SAMORA, in his official capacity as Clerk and Treasurer of the Town of Center, Colorado; and Town of Center, Colorado, a Colorado statutory town, Defendants-Appellees.**

**Court of Appeals No. 15CA1136**

Colorado Court of Appeals,
Div. VI.

Announced December 29, 2016

Robert A. McGuire, Lone Tree, Colorado, for Plaintiffs-Appellants

Lasater & Martin, P.C., Peter H. Doherty, Highlands Ranch, Colorado, for Defendant-Appellee Christian Samora

Nathan, Dumm & Mayer, P.C., Marni Nathan Kloster, Ashley Hernandez-Schlagel, Denver, Colorado, for Defendant-Appellee Town of Center

Opinion by JUDGE BERNARD

¶ 1 Americans cherish their right to cast secret ballots in elections of public officers. So what should a court do if it learns that there was a flaw in handling ballots that created the opportunity for election judges to learn the identities of some voters who had mailed in their ballots? In this case, although the flaw created such an opportunity, the trial court found that the opportunity did not flower into a reality. In other words, the election judges did not take advantage of the opportunity to learn who had mailed in these ballots.

¶ 2 And the flaw did not change the final tally in the election. It occurred after the ballots had been cast, and there is no indication in the record that the flaw affected the tallying of the votes. So the flaw did not change the number of votes that any candidate received.

¶ 3 Maurice C. Jones, one of the plaintiffs in this case, lost his seat as a trustee for the Town of Center, Colorado, after a recall election. (Two other trustees also lost their seats, but they are not parties to this appeal.) He then joined with the other plaintiff in this case, Citizen Center, a nonprofit group that focuses on "protect[ing] the rights of its members, including the fundamental right to vote."

¶ 4 When we refer to the former trustee—Mr. Jones—and Citizen Center together, we will call them "the plaintiffs." But there are certain issues in this appeal, such as standing, that require us to analyze their positions separately. We will therefore refer to them individually when we consider those issues.

¶ 5 As is pertinent to our analysis, the plaintiffs filed a claim in state court against two defendants, the Town of Center and its clerk, Christian R. Samora, relying in part on 42 U.S.C. § 1983 (2012). (The plaintiffs sued other defendants, too, but those defendants are not part of this appeal.) We will refer to the defendants jointly as "the Town."

¶ 6 Both sides filed motions for summary judgment. The trial court granted the Town's motion, but it denied the plaintiffs' motion. The plaintiffs appeal. We affirm.

I. Background

A. The Election

¶ 7 Concerned that the Town of Center's trustees, including Mr. Jones, were planning to increase utility fees unilaterally, the Town of Center's residents organized a recall election to oust the trustees from their positions.

¶ 8 Voters in the recall election voted one of two ways. Some of them received their ballots in the mail and returned them by mail. Others voted in person at the polling place.

¶ 9 All of the ballots had two numbered stubs attached to them. Based on those stubs, Mr. Samora had a list that showed which voter had received which ballot. He used this list to ensure that each voter had voted only once. He knew which voters had returned their mail ballots, so he could compare that list with the list of the voters who had voted in person.

¶ 10 The voting procedures were also designed to protect the right each voter had to cast a secret ballot. They required that election judges remove all the stubs from all the ballots before they began to tally them.

¶ 11 These procedures were followed with regard to all the in-person ballots that were cast in the recall election. The judges removed all the stubs before these votes were tallied. See § 31-10-607, C.R.S. 2016 (setting out voting procedures for in-person voters

with paper ballots). So the election judges did not have any way to know which voter had cast which in-person ballot.

¶ 12 But the procedures were not followed at all times with regard to the mail-in ballots. *See* § 31–10–1007(1), C.R.S. 2016 (noting that ballots for absentee voters—the mail-in ballots in this case—"must ... be cast and counted in the same manner as if such absentee voter had been present in person"). At some point during the process of tallying the ballots, the election judges realized that they had not removed the stubs from at least some of them. The judges decided to continue tallying the ballots before they removed the stubs. So the election judges could see the identifying numbers on the stubs when they tallied the votes, but they could not determine the identity of the voters without consulting the voter list.

### B. Bench Trial

¶ 13 The plaintiffs included five state law claims and a § 1983 claim in their complaint. The trial court severed the state law claims from the § 1983 claim. It then held a bench trial on the state law claims. As is relevant to this appeal, the court found the following:

- "The preponderance of the evidence at trial establishes that no election judges or watchers accessed voter lists during the counting of the ballots, none knew which ballot numbers were assigned to which voter during the counting process and no photographs or videos were taken of the ballots."
- "[T]his was an election which was fundamentally untainted by any substantive intentional error of procedure, free of any fraud or intentional violation of voting secrecy."
- "There is no credible evidence to find that any improper use of the [voter] lists occurred. The preponderance of the evidence fails to establish that any comparison of the lists to the [mail-in] ballots[,] with the stubs still affixed, occurred at any time in the counting process."
- "The Court is satisfied that counting of [mail-in] ballots occurred with stubs affixe[d] but[ ] that this was not intentional nor is there any evidence that anyone, including the election judges, took this opportunity to in fact violate the secrecy of the ballot."

¶ 14 Despite these findings, the trial court concluded that the tallying of the mail-in ballots had violated article VII, section 8 of the Colorado Constitution, which states that "no ballots shall be marked in any way whereby the ballot can be identified as the ballot of the person casting it." Although the court found that the election judges had not compared the voter lists with the stubs, the court decided that, because they had seen both the voter list and the stub numbers of the mail-in ballots, they had had the *opportunity* to compare the two. The court thought that the existence of this opportunity meant that the Town had violated "the state of Colorado's constitutional and statutory guarantee of a secret ballot."

¶ 15 So the court concluded that the results of the recall election were void, *see Taylor v. Pile*, 154 Colo. 516, 522–23, 391 P.2d 670, 673 (1964), and it ordered the Town to hold a new recall election within thirty to ninety days. In the meantime, the trustees who had been recalled would remain in office.

### C. Supreme Court Opinion

¶ 16 The Town appealed. Our supreme court reversed the trial court's decision, and it reinstated the recall election results. *See Jones v. Samora*, 2014 CO 4, ¶ 39, 318 P.3d 462. Although the supreme court agreed that the Colorado Municipal Election Code had been violated, *see* §§ 31–10–607, -1007, it concluded that there had not been a constitutional error because the ballots had not been "marked" for the purposes of article VII, section 8. *See Jones*, ¶ 31. The election judges had not marked the ballots so that the ballots could be linked to particular voters. Instead, the stubs were on the ballots because a statute required them to be there. *See id.* And, because the election judges had not violated article VII, section 8, the trial court erred when it concluded that the election had been void. *Id.* at ¶¶ 38–39.

¶ 17 The supreme court then observed that

it is undisputed that the ballot was secret at the time both the in-person and [mail-in] Town of Center voters voted. There was no credible evidence presented that voters were not free to vote as they wished or were intimidated in any way.... In sum, there was no evidence that the secrecy or integrity of this entire election was put in jeopardy by the election judges' error in partially counting the [mail-in] ballots with the numbered stubs still attached.

*Id.* at ¶ 35.

¶ 18 In reaching this result, the supreme court relied on the trial court's factual findings, including the trial court's finding that no one, including the election judges, had "violate[d] the secrecy of the ballot." *Id.* at ¶ 11.

### D. § 1983 Claim

¶ 19 The plaintiffs' § 1983 claim remained at issue because the trial court had severed it from the state law claims. So, after the supreme court's decision, the trial court had to resolve it. Both sides of the case moved for summary judgment. The trial court granted the Town's motion, and it denied the plaintiffs' motion.

## II. Standing

¶ 20 To begin, the Town asserts that the plaintiffs did not have standing to file this case. We conclude that Citizen Center has standing, but that the trustee does not.

### A. Law

¶ 21 We analyze the question whether a party has standing de novo. *Ainscough v. Owens*, 90 P.3d 851, 856 (Colo. 2004). When deciding whether a party has standing, "all averments of material fact in a complaint must be accepted as true." *State Bd. for Cmty. Colls. & Occupational Educ. v. Olson*, 687 P.2d 429, 434 (Colo. 1984). "A party's standing is assessed at the time a lawsuit is filed." *Indep. Inst. v. Coffman*, 209 P.3d 1130, 1140 (Colo. App. 2008).

#### 1. Individual Standing

¶ 22 Our supreme court has relied on Colorado's standing test to evaluate standing

in § 1983 cases. *See Olson*, 687 P.2d at 434–35; *see also Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981) (per curiam) ("Because 42 U.S.C. § 1983 ... is silent on the question of standing, state law governs the resolution of this issue.").

¶ 23 Our supreme court articulated Colorado's test for standing in *Wimberly v. Ettenberg*, 194 Colo. 163, 168, 570 P.2d 535, 539 (1977). The test has two prongs. *See id.* First, the court must decide "whether the plaintiff has suffered actual injury from the challenged governmental action." *Olson*, 687 P.2d at 434. Second, the court must determine "whether the injury is to a legally protected or cognizable interest." *Id.*; *see also Hickenlooper v. Freedom from Religion Found., Inc.*, 2014 CO 77, ¶ 8, 338 P.3d 1002 (setting out *Wimberly*'s "routine" test for standing).

¶ 24 The first prong of the standing test is not satisfied if the alleged injury is "overly 'indirect and incidental' to the defendant's action." *Ainscough*, 90 P.3d at 856 (citation omitted). Rather, this prong requires "that an actual controversy exists so that the matter is a proper one for judicial resolution." *Hickenlooper*, ¶ 9.

¶ 25 Whether the second prong is met turns on the question of "whether the plaintiff has a claim for relief under the constitution, the common law, a statute, or a rule or regulation." *Ainscough*, 90 P.3d at 856.

#### 2. Third-Party Standing

¶ 26 Colorado's third-party standing rule "prevents a party from asserting the claims of third parties who are not involved in the lawsuit." *City of Greenwood Village v. Petitioners for Proposed City of Centennial*, 3 P.3d 427, 439 (Colo. 2000). However, "a party who has shown sufficient personal injury-in-fact to confer standing on himself" may assert the rights of third parties in "exceptional circumstances." *Denver Ctr. for the Performing Arts v. Briggs*, 696 P.2d 299, 304–05 (Colo. 1985). The presence of at least one of the following constitutes an exceptional circumstance:

a substantial relationship between the litigant and the third party; the difficulty or improbability that the third parties will ever assert their own constitutional rights; or the need to grant standing in order to avoid dilution of the third party's rights. *Id.* at 305.

### 3. Taxpayer Standing

¶ 27 Colorado law also gives taxpayers standing in certain situations. *See Hickenlooper*, ¶ 12 ("Unlike the United States Supreme Court's narrow view of taxpayer standing, this Court has consistently permitted broad taxpayer standing."). Taxpayers satisfy the injury-in-fact requirement if they allege that an "injury flow[ed] from governmental violations of constitutional provisions that specifically protect the legal interests involved." *Conrad v. City & Cty. of Denver*, 656 P.2d 662, 668 (Colo. 1982). Put differently, they must allege an "injury based on an unlawful expenditure of their taxpayer money ... [or] that their tax dollars are being used in an unconstitutional manner." *Hickenlooper*, ¶ 14.

¶ 28 But plaintiffs must also show a nexus between their "status as ... taxpayer[s] and the challenged government action." *Id.* at ¶ 12. If they show that the government action violated a constitutional provision, "such an averment satisfies the two-step standing analysis." *Barber v. Ritter*, 196 P.3d 238, 247 (Colo. 2008).

### 4. Organizational Standing

¶ 29 An organization may also have standing to raise constitutional claims on behalf of its members. To satisfy this standing test, the organization must show that (1) "its members would otherwise have standing to sue in their own right"; (2) "the interests it seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit." *Conestoga Pines Homeowners' Ass'n v. Black*, 689 P.2d 1176, 1177 (Colo. App. 1984) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)).

### B. Application

¶ 30 We will separately analyze whether the trustee and Citizen Center have standing.

#### 1. The Trustee Did Not Have Individual Standing

¶ 31 The trustee alleged in the complaint that (1) the mail-in ballots were "illegal votes" because their stubs were not removed, yet they were tallied anyway; and (2) "if only in-person votes were counted," that is, if the Town had only counted the *legal* votes, "none of the candidates subject to recall would have been recalled."

¶ 32 Skipping to the causation component of individual standing, recall that the putative injury in fact must arise from the Town's conduct in order to satisfy the first prong of the standing test. *See Wimberly*, 194 Colo. at 168, 570 P.2d at 539. At oral argument, the plaintiffs' counsel conceded, and the record supports the fact, that the loss of the trustee's position did not arise from the Town's conduct. The trustee therefore cannot satisfy the injury requirement, so he does not have individual standing.

#### 2. The Trustee Did Not Have Third-Party Standing

¶ 33 The trustee also appears to assert, although not entirely clearly, that he suffered a different injury because voters who voted for him via mail-in ballot suffered an injury. Once the secrecy of these voters' ballots was compromised, his contention continues, those voters faced intimidation because members of the community confronted them about their votes. So, he concludes, this injury can be imputed to him. We construe this argument as alleging that the trustee may invoke third-party standing on behalf of the mail-in voters. *See generally id.* (describing the requirements to invoke third-party standing).

¶ 34 But the third-party standing argument falls flat. A plaintiff attempting to invoke third-party standing must still show "injury in fact *to himself.*" *Augustin v. Barnes*, 626 P.2d 625, 628 (Colo. 1981) (emphasis added). So voter intimidation is not

the appropriate injury to consider for purposes of third-party standing. Instead, we must consider the injury to the trustee. *See People v. Rosburg*, 805 P.2d 432, 435 (Colo. 1991) ("To have standing to assert the rights of third parties not before the court, the parties before the court must demonstrate injury to themselves sufficient to guarantee concrete adverseness.").

¶ 35 As we discussed above, the Town's conduct did not cause the trustee to lose his seat. So he does not have an injury that would confer standing to him, *Ainscough*, 90 P.3d at 856, and he cannot avail himself of the third-party standing doctrine. We therefore do not need to examine whether any of the exceptional circumstances discussed in *Denver Center for the Performing Arts* are present in this case.

### 3. The Trustee Did Not Have Taxpayer Standing

¶ 36 The trustee also did not show that he had taxpayer standing, although he relied on an injury that was different from the ones he relied on for individual standing and third-party standing. He alleged that he was a taxpayer in the Town of Center and that the ballot-counting procedures violated the Constitution.

¶ 37 But the complaint did not allege that his "tax dollars [were] being used in an unconstitutional manner." *Hickenlooper*, ¶ 14. Specifically, although the trustee alleged that the election judges had violated the Constitution when they did not remove the stubs before tallying the mail-in ballots, he did not establish "a clear nexus between his status as a taxpayer" and their failure to remove the ballot stubs. *Id.* at ¶ 12. So, in this way, this case is like *Hickenlooper* because the trustee did not "assert any injury based on an unlawful expenditure of [his] taxpayer money." *Id.* at ¶ 14.

¶ 38 In short, the trustee lacked standing to raise the § 1983 claim. But our standing analysis is not yet complete.

### 4. Citizen Center Had Organizational Standing

¶ 39 We conclude, for the following reasons, that Citizen Center had organizational standing.

¶ 40 First, the complaint noted that "[o]ne or more members of Citizen Center were ... registered elector[s] of the Town who voted by [mail-in] ballot." The complaint referred to a member of Citizen Center who had voted in the recall election by mail-in ballot, and, accepting the complaint's allegations as true, her right to cast a secret ballot had allegedly been violated. *Conestoga Pines Homeowners' Ass'n*, 689 P.2d at 1177 (noting that the first requirement of organizational standing is met where the members "would otherwise have standing to sue in their own right") (citation omitted).

¶ 41 Next, the interests Citizen Center sought to protect were germane to the organization's purpose: protecting the right to vote and other civil rights. And the claim asserted and relief requested did not require that individual members of the organization participate in the case. *See id.*

### III. Summary Judgment Principles

¶ 42 We examine a trial court's decision to grant or to deny a motion for summary judgment de novo. *Geiger v. Am. Standard Ins. Co. of Wis.*, 192 P.3d 480, 482 (Colo. App. 2008).

¶ 43 A trial court should grant a motion for summary judgment only if there "is no genuine issue as to any material fact." *Town of Berthoud v. Town of Johnstown*, 983 P.2d 174, 175 (Colo. App. 1999). The moving party bears the burden to show that there is no genuine issue of material fact. *See id.* "The nonmoving party is entitled to the benefit of all favorable inferences that reasonably may be drawn from the evidence, and all doubts as to the existence of a genuine issue of material fact must be resolved in that party's favor." *Edwards v. Bank of Am., N.A.*, 2016 COA 121, ¶ 12, 382 P.3d 1272. If the moving party satisfies its burden, the burden shifts to the nonmoving party to show that there is a triable issue of fact. *AviComm, Inc. v. Colo. Pub. Utils. Comm'n*, 955 P.2d 1023, 1029 (Colo. 1998).

¶ 44 When both parties move for summary judgment, the trial court must

"consider each motion separately." *AF Prop. P'ship v. State, Dep't of Revenue*, 852 P.2d 1267, 1270 (Colo. App. 1992). One party's assertion of undisputed facts cannot "be applied in connection with" the other party's cross-motion for summary judgment. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1340 (Colo. 1988) (citation omitted).

## IV. Preclusive Effect of State Claims Proceeding

¶ 45 As mentioned above, the supreme court addressed the state claims arising from the recall election, concluding that "there was no evidence that the secrecy or integrity of this entire election was put in jeopardy by the election judges' error in partially counting the [mail-in] ballots with the numbered stubs still attached." *Jones*, ¶ 35. The Town asserts that the doctrines of law of the case and issue preclusion apply to scuttle Citizen Center's § 1983 claim. We conclude that the law of the case doctrine is inapplicable, but that the issue preclusion doctrine applies.

### A. Standard of Review

¶ 46 Whether the law of the case or issue preclusion applies to bar the litigation of an issue is a question that we review de novo. *See Stanton v. Schultz*, 222 P.3d 303, 307 (Colo. 2010) (issue preclusion); *People v. Misenhelter*, 214 P.3d 497, 500 (Colo. App. 2009) (law of the case), *aff'd*, 234 P.3d 657 (Colo. 2010).

### B. Law of the Case

#### 1. Law

¶ 47 Under the law of the case doctrine, "[c]onclusions of an appellate court on issues presented to it as well as rulings logically necessary to sustain such conclusions" are binding in the same case. *Hardesty v. Pino*, 222 P.3d 336, 340 (Colo. App. 2009) (alteration in original) (quoting *Super Valu Stores, Inc. v. Dist. Court*, 906 P.2d 72, 78–79 (Colo. 1995)). Stated differently, "prior relevant rulings made in the same case are to be followed unless such application would result in error." *People v. Dunlap*, 975 P.2d 723, 758 (Colo. 1999). The doctrine "applies only to a court's decisions of law and not to

its resolution of factual questions." *In re Marriage of Dunkle*, 194 P.3d 462, 467 (Colo. App. 2008).

¶ 48 Colorado courts have not precisely defined "same case" or "same proceeding" for purposes of the law of the case doctrine. A different jurisdiction has explained, "the law of the case doctrine applies to a second review by an appellate court on another phase of the same case, i.e., a phase that occurs before the case has ended." *Merkel v. W.C.A.B. (Hofmann Indus.)*, 918 A.2d 190, 194 (Pa. Commw. Ct. 2007) (emphasis omitted).

¶ 49 Colorado courts have, however, recognized that "[s]everance ... makes a separate and independent action of the severed claim." *King v. W. R. Hall Transp. & Storage Co.*, 641 P.2d 916, 918 n.6 (Colo. 1982) (citation omitted); *Maxwell v. United Servs. Auto. Ass'n*, 2014 COA 2, ¶ 4, 342 P.3d 474 ("The trial court severed the case into *separate proceedings* against specific insurers.") (emphasis added); *see* C.R.C.P. 21 ("Any claim against a party may be severed and proceeded with separately."); *see also Hofmann v. De Marchena Kaluche & Asociados*, 642 F.3d 995, 998 (11th Cir. 2011) ("A severed claim under Rule 21 proceeds as a discrete suit and results in its own final judgment from which an appeal may be taken."); *Valdez v. Cox Commc'ns Las Vegas*, 336 P.3d 969, 971 (Nev. 2014); *In re Reynolds*, 369 S.W.3d 638, 650 (Tex. App. 2012) ("A severance divides a lawsuit into two or more separate and independent causes. When a trial court grants a severance, the separated causes of action typically proceed to individual judgments that are themselves separately final and appealable.") (citation omitted); *cf.* C.R.C.P. 54(b) ("[T]he court may direct the entry of a final judgment as to one or more but fewer than all of the claims...."); 10 James Wm. Moore et al., *Moore's Federal Practice* § 54.21[2] (3d ed. 1997) (noting that a judgment under Fed. R. Civ. P. 54(b) is in effect, though not in form, a severance of the adjudicated claims from the remainder of the action).

#### 2. Application

¶ 50 We conclude, for two reasons, that the law of the case doctrine does not apply to this appeal.

¶ 51 First, the state law claims proceeding and this proceeding concerning the § 1983 claim were not the same case by the time the trial court resolved the § 1983 claim. *See Soc'y of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1214 (5th Cir. 1991) (noting that law of the case doctrine only applies "during the pendency of … a *single proceeding*") (citation omitted). When the trial court severed the state claims from the § 1983 claim, the two groups of claims became "separate and independent." *King*, 641 P.2d at 918 n.6 (citation omitted). And, once our supreme court rejected Citizen Center's state law claims, that proceeding ended; that is, there were no more "successive stages of the same litigation[.]" *People v. Gurule*, 699 P.2d 9, 10 (Colo. App. 1984); *see People v. Janke*, 852 P.2d 1271, 1274 (Colo. App. 1992) ("[B]ecause we are concerned here with a *final* order, reconsideration of the original ruling under the law of the case doctrine is improper.").

¶ 52 Our research has uncovered one appellate opinion that applied the law of the case doctrine in the context of severed causes of action. *Sledge v. Mullin*, 927 S.W.2d 89, 93 (Tex. App. 1996). However, *Sledge* did not provide any authority or in-depth analysis about why severed claims, resolved in separate proceedings, would trigger the law of the case doctrine. We therefore do not think that opinion is persuasive.

¶ 53 Second, the law of the case doctrine "applies only to a court's decisions of law and not to its resolution of factual questions." *Dunkle*, 194 P.3d at 467. Whether the Town actually violated voter secrecy rights is a question of fact.

¶ 54 We therefore conclude that the law of the case doctrine does not apply to this case.

### C. Issue Preclusion

#### 1. Law

¶ 55 Issue preclusion bars relitigating factual matters that a court has previously litigated and decided. *Calvert v. Mayberry*, 2016 COA 60, ¶ 15, —— P.3d —— (citing *Carpenter v. Young*, 773 P.2d 561, 565 n.5 (Colo. 1989)). Under the issue preclusion doctrine, factual matters may be preclusive for purposes of summary judgment. *See, e.g.,*

*Wall v. City of Aurora*, 172 P.3d 934, 937-38 (Colo. App. 2007).

¶ 56 Issue preclusion applies when (1) the issue is identical to the issue "actually and necessarily adjudicated" in the previous case; (2) the party against whom the doctrine is sought was a party or in privity with a party in the prior case; (3) the prior case ended with a final judgment on the merits; and (4) the party against whom issue preclusion is asserted "had a full and fair opportunity to litigate the issue[ ]" in the prior case. *Calvert*, ¶ 12 (citation omitted).

¶ 57 We have not found any cases in Colorado that have analyzed whether issue preclusion applies when multiple claims are brought together, then severed, and the court reaches a final judgment on the first set of claims to be litigated.

¶ 58 Other jurisdictions vary on whether issue preclusion applies in these circumstances. *Compare Gragg v. State*, 429 So.2d 1204, 1208 (Fla. 1983) ("[W]e hold that a defendant who successfully severs one charge from other charges is not estopped from asserting collateral estoppel [issue preclusion] as a bar to further prosecution under the severed charge."), *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 690 N.Y.S.2d 478, 712 N.E.2d 647, 651 (1999) (noting that even though the federal claims were severed from a statutory proceeding, all the constitutional violations alleged were analyzed; thus, "all of the factual issues dispositive of the constitutional claims being raised in the instant action were necessarily decided in the prior … proceeding"), *and Commonwealth v. States*, 891 A.2d 737, 744–45 (Pa. Super. Ct. 2005) (noting that acquittal in defendant's previous trial was binding in subsequent proceeding where the charges against defendant had been severed), *aff'd*, 595 Pa. 453, 938 A.2d 1016 (2007), *with Blades v. Woods*, 338 Md. 475, 659 A.2d 872, 874 (1995) ("Nor did the circuit court's severance order …. have the effect of converting the single action filed by Blades into two separate actions, for purposes of … issue preclusion so that a ruling in the phase firstly to be decided could be conclusive in the phase secondly to be decided."); *see generally* Restatement (Second) of Judgments § 13

(Am. Law Inst. 1982) ("[F]or purposes of issue preclusion . . . , 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.").

### 2. Application

¶ 59 We conclude, for the following reasons, that the issue preclusion doctrine applies to this case.

¶ 60 First, when discussing the doctrine of law of the case, we cited authority, including two Colorado cases and a Colorado rule of civil procedure, which indicates that the act of severing claims makes them "separate and independent action[s]." *King*, 641 P.2d at 918 n.6 (citation omitted); *see Hofmann*, 642 F.3d at 998; *Maxwell*, ¶ 4; *Valdez*, 336 P.3d at 971; *In re Reynolds*, 369 S.W.3d at 650; *see also* C.R.C.P. 21.

¶ 61 Second, we are persuaded by the reasoning in the authority from other jurisdictions that holds that the doctrine of issue preclusion would apply in a case such as this one. *See Gragg*, 429 So.2d at 1208; *Parker*, 690 N.Y.S.2d 478, 712 N.E.2d at 651; *States*, 891 A.2d at 744–45. We are not persuaded by *Blades*, 659 A.2d at 874, because the analysis in the case was comparatively cursory.

¶ 62 Third, the decision in *Jones* was a final judgment as far as the state law claims were concerned.

¶ 63 We now turn to applying the components of the issue preclusion doctrine.

¶ 64 First, we conclude that the factual issue in the state proceeding was identical to the factual issue pertinent to this § 1983 claim: whether the mail-in voters' secrecy rights were actually violated because the Town's election judges did not remove the ballot stubs before they tallied some of the mail-in ballots. Indeed, the court's conclusion that the secrecy of the voters' ballots was not violated was necessary to the supreme court's conclusion that the results of the recall election should not be vacated. *See Jones*, ¶ 38 (noting that "the fundamental integrity of the Town . . . recall election was not called into question," and concluding that the election results were valid).

¶ 65 The second and third components are met: Citizen Center was involved in the state claims case, and that case ended in a final judgment.

¶ 66 The fourth component of the doctrine is also satisfied. Citizen Center had a full and fair opportunity to litigate the factual issue of whether the mail-in voters' secrecy rights were violated. Indeed, this question was central to the state claims case.

¶ 67 Because we have concluded that each component of the issue preclusion doctrine was met, we further conclude that the doctrine bars Citizen Center from relitigating whether the mail-in voters' secrecy rights were violated. *See, e.g., Calvert*, ¶¶ 11–19 (concluding that factual issue, which was litigated in a disciplinary proceeding, was preclusive in party's separate appeal from a denial of summary judgment).

### V. The Trial Court Properly Granted the Town's Summary Judgment Motion, and It Properly Denied Citizen Center's Summary Judgment Motion

¶ 68 Having concluded that Citizen Center had standing to bring its § 1983 claim, but that the issue preclusion doctrine applies, we turn to resolving the merits of Citizen Center's appeal.

### A. Preservation

¶ 69 The Town concedes that Citizen Center preserved its procedural arguments *concerning the trial court's decision to deny its motion for summary judgment*. But the Town asserts that Citizen Center did not preserve its "substantive" appellate arguments about that decision because Citizen Center "submitted [its] substantive legal analysis in [its] Reply in Support of [its] Motion and asserted only procedural deficiencies in [its] Response to the Cross Motion."

¶ 70 We disagree with the Town because Citizen Center asserted the same "substantive claims" that it now raises on appeal in its response to the Town's motion for summary judgment. We therefore conclude that all its claims were preserved.

## B.  Law

■ ¶ 71 "In order to prevail under § 1983, a plaintiff must show that the defendant, under color of state law, deprived the plaintiff of a right secured by the Constitution and laws of the United States." *Jaffe v. City & Cty. of Denver*, 15 P.3d 806, 811 (Colo. App. 2000). Citizen Center asserted that the Town violated the substantive due process, procedural due process, and equal protection rights of its members.

■ ¶ 72 The Due Process Clause guarantees that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The government violates the constitutional guarantee of substantive due process when it infringes on fundamental liberty interests unless the infringement is narrowly tailored to serve a compelling state interest. *People v. Dash*, 104 P.3d 286, 290 (Colo. App. 2004). A person acting under color of state law violates the constitutional guarantee of procedural due process when he or she deprives the plaintiff of rights, privileges, or immunities secured by the Constitution. *Eason v. Bd. of Cty. Comm'rs*, 70 P.3d 600, 604 (Colo. App. 2003).

■ ¶ 73 The Equal Protection Clause requires the government to treat similarly situated persons in a like manner. U.S. Const. amend. XIV; *Buckley Powder Co. v. State*, 70 P.3d 547, 561 (Colo. App. 2002). Several circuits have noted that, in the equal protection context, individual or "isolated" events that negatively affect one group of people "are not presumed to be a violation of the equal protection clause," and a plaintiff must make some showing of intentional or purposeful discrimination to succeed on its equal protection claim. *Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir. 1980); *see also Gelb v. Bd. of Elections*, 224 F.3d 149, 154 (2d Cir. 2000).

## C.  Application

■ ¶ 74 We conclude, for the reasons that we explain below, that the record and the supreme court's holdings in *Jones* supported the trial court's decision to grant the Town's motion for summary judgment and to deny Citizen Center's motion for summary judgment. In other words, we conclude that the trial court properly found that, despite giving Citizen Center all the favorable inferences that could reasonably be drawn from the evidence and resolving all doubts in its favor, *see Edwards*, ¶ 12, the Town had satisfied its burden to show that there was no genuine issue as to any material fact, *see Town of Berthoud*, 983 P.2d at 175. And, once that burden shifted, Citizen Center did not show that there was a triable issue of fact. *See AviComm, Inc.*, 955 P.2d at 1029.

¶ 75 The record also satisfies us that the trial court considered Citizen Center's summary judgment motion separately from the Town's, *see AF Prop. P'ship*, 852 P.2d at 1270, and that the court did not apply the Town's assertion of undisputed facts in its summary judgment motion "in connection with" Citizen Center's summary judgment motion, *Churchey*, 759 P.2d at 1340 (citation omitted). And we likewise conclude that the record supports the trial court's decision that Citizen Center had not satisfied its burden to show that there was no genuine issue as to any material fact. *See Town of Berthoud*, 983 P.2d at 175.

¶ 76 Turning first to the substantive due process claim, we have explained above that such a claim exists if the government *infringes* upon fundamental liberty interests unless the infringement narrowly addresses a compelling state interest. *See Dash*, 104 P.3d at 290 (defining a substantive due process claim). But, in this case, the trial court concluded, and the supreme court reiterated, that no actual secrecy violation occurred. Applying the issue preclusion doctrine, this means that the supreme court's conclusion that there was no secrecy violation bars Citizen Center's substantive due process claim alleging that there was. In other words, the conduct of the election judges did not infringe on Citizen Center members' rights.

¶ 77 We similarly conclude, by again applying the issue preclusion doctrine, that the Town did not deprive those members of their procedural due process right to cast a secret ballot. *See Eason*, 70 P.3d at 604 (defining a procedural due process claim).

¶ 78 Turning to the equal protection claim, the trial court found that, although the "counting of [mail-in] ballots occurred with stubs affixe[d]," that conduct "was not intentional," and there was no evidence "that anyone, including the election judges, took this opportunity to in fact violate the secrecy of the ballot." This finding makes clear that Citizen Center did not show the sort of intentional or purposeful discrimination necessary to succeed on its equal protection claim. *See Gelb*, 224 F.3d at 154; *Gamza*, 619 F.2d at 453.

¶ 79 The facts that the supreme court relied on in *Jones* show that the mail-in voters and the in-person voters were not treated differently because their right to a secret vote was not burdened. But we recognize that the tallying process for each set of ballots was technically different: election judges counted the former with stubs attached but the latter with stubs removed. Citizen Center seems to contend that this technically disparate counting process violated the equal protection rights of its members. *See Bush v. Gore*, 531 U.S. 98, 104–05, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000) (noting that equal protection of the right to vote requires voters to be treated equally not just in the act of casting votes, but also in the counting process).

¶ 80 We do not read *Bush* as supporting this claim. In *Bush*, the inconsistent counting processes "led to unequal *evaluation* of ballots in various respects." *Id.* at 106, 121 S.Ct. 525 (emphasis added). That is, some votes were tallied, while others were not. *See id.* But in this case, Citizen Center's § 1983 claim, as alleged in the complaint, did not assert that the ballots were tallied differently.

¶ 81 We also think that, in light of the supreme court's conclusion that the mail-in voters' secrecy rights were not abridged, the contention that a difference in tallying the ballots would be enough to violate the Equal Protection Clause could lead to absurd results. Say, for example, that the in-person ballots were placed in a green bucket before and after counting, but that the mail-in ballots were placed in a yellow bucket before and after counting. In this hypothetical, the counting process would be technically different for each group of ballots because they were placed in different-colored buckets. But this difference would not impact a voter's right to secrecy. *Cf. Williams v. Rhodes*, 393 U.S. 23, 30, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) ("[T]he Equal Protection Clause does not make every minor difference in the application of laws to different groups a violation of our Constitution.").

¶ 82 Citizen Center urges us to apply the equal protection test set out in *Crawford v. Marion County Election Board*, 553 U.S. 181, 190, 128 S.Ct. 1610, 170 L.Ed.2d 574 (2008). This test requires that the court, when weighing a constitutional challenge to an election regulation, must "weigh the asserted injury to the right to vote against the 'precise interests put forward by the State as justifications for the burden imposed by its rule.'" *Id.* (citations omitted). According to Citizen Center, it has satisfied this test because the Town counted the ballots illegally, and "conduct that violates the law is accorded no legitimacy."

¶ 83 We do not think that this test applies to this case because it concerns an election *regulation*, while the facts in this case pertain to a procedural electoral flaw. And, even if the test applied, Citizen Center did not satisfy it because it did not establish an "asserted injury to the right to vote" in the recall election.

¶ 84 In summary, although the counting method that the Town used *risked* a deprivation of constitutional rights, that risk never flowered into an actual deprivation of constitutional rights. Because the undisputed facts foreclose Citizen Center's argument that its members suffered a deprivation of their rights, we need not address whether the Town acted under color of state law when the election judges did not remove the ballot stubs before they tallied the mail-in ballots.

## VI. Attorney Fees

¶ 85 Citizen Center asks us to award its appellate attorney fees. *See* 42 U.S.C. § 1988(b) (2012) (noting that a court may award the prevailing party attorney fees in a claim under § 1983). We deny this request

because Citizen Center did not prevail in this appeal.

¶ 86 The judgment of the trial court is affirmed.

Fox and Vogt *, JJ., concur